RODERICK G. DORMAN (SBN 96908)
rdorman@mckoolsmithhennigan.com
LAWRENCE M. HADLEY (SBN 157728)
lhadley@mckoolsmithhennigan.com
MIEKE K. MALMBERG (SBN 209992)
mmalmberg@mckoolsmithhennigan.com
MCKOOL SMITH HENNIGAN, P.C.
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

Attorneys for Plaintiff
GOLDEN BRIDGE TECHNOLOGY, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GOLDEN BRIDGE TECHNOLOGY, INC.,<br>Plaintiff,<br>vs.<br>APPLE INC.,<br>Defendant. | Case No. CV-12-04882-PSG<br><br>**PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF**<br><br>**HEARING DATE: JUNE 26, 2013**<br>**TIME: 10:00 A.M.**<br>**COURTROOM: 5**<br><br>**MAGISTRATE JUDGE: HON. PAUL SINGH GREWAL** |
| AND RELATED COUNTERCLAIM. | |

MCKOOL SMITH HENNIGAN, P.C.
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. DISPUTED TERMS AND PROPOSED CONSTRUCTIONS ..... 1

A. "MULTICHANNEL-SPREAD-SPECTRUM TRANSMITTER" ..... 1

B. "DATA CHANNEL" ..... 4

C. "SPREAD-SPECTRUM DATA CHANNEL" ..... 7

D. "SPREAD-SPECTRUM HEADER CHANNEL" ..... 7

E. "CHIP SEQUENCE SIGNALS" AND "PARALLEL CHIP SEQUENCE SIGNALS" ..... 8

F. "PRODUCT DEVICES" ..... 9

G. "SYNCHRONIZING THE PLURALITY OF DATA CHANNELS" ..... 9

H. "SPREAD SPECTRUM MEANS…" ..... 10

I. "COMBINER MEANS…" ..... 12

J. "CARRIER MEANS…" ..... 13

K. "MEANS FOR GENERATING THE PLURALITY OF CHIP SEQUENCE SIGNALS" (NOW UNDISPUTED) ..... 14

L. "HEADER"(NOW UNDISPUTED) ..... 15

III. CONCLUSION ..... 15

McKool Smith Hennigan, P.C.
Los Angeles, California

## TABLE OF AUTHORITIES

**CASES** ¶¶ **PAGE(S)**

*Alloc, Inc. v. International Trade Commission*, 342 F.3d 1361 (Fed. Cir. 2003) ..... 2

*Bell Atlantic Network Servs., Inc. v. Covad Communications Grp.*, 262 F.3d 1258 (Fed. Cir. 2001) ..... 2

*Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361 (Fed. Cir. 2005) ..... 14

*Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295 (Fed. Cir. 2004) ..... 3

*O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576 (Fed. Cir. 1997) ..... 3

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ..... passim

*SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems*, 242 F.3d 1337 (Fed. Cir. 2001) ..... 3

*Toro Co. v. White Consol. Indus.*, 199 F.3d 1295 (Fed. Cir. 1999) ..... 3

*Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376 (Fed. Cir. 2011) ..... 2

*Versa Corp. v. Ag-Bag International Ltd.*, 392 F.3d 1325 (Fed. Cir. 2004) ..... 14

*Vitronics Corp. v. Conceptronic*, 90 F.3d 1576 (Fed. Cir. 1996) ..... 2, 5

*Wang Labs., Inc. v. Am. Online, Inc.*, 197 F.3d 1377 (Fed. Cir. 1999) ..... 2

**OTHER AUTHORITIES**

U.S. Patent No. 5,896,374 ..... 5, 10

McKool Smith Hennigan, P.C.
Los Angeles, California

## I. INTRODUCTION

Throughout its responsive claim construction brief, Apple accuses GBT of seeking to "thread the needle" to allegedly avoid alleged prior art. Apple cites to the allegedly disputed terms "transmitter" and "channel" as examples. (Resp. Br. at 2). Apple has it half right. Properly construed the asserted claims do not read on the prior art.

Apple is the party engaged in contrivance. The actual disputed terms are "multichannel-spread-spectrum transmitter" and "data channel," "spread-spectrum data channel," and "spread-spectrum header channel," and Apple's constructions ignore language in the '793 patent intrinsic documents. Apple admittedly bases its own proposed constructions (of the wrong claim terms) on isolated excerpts from completely unrelated patents and alleged prior art.. Because Apple's proposed constructions are divorced from the intrinsic evidence and claim language, they should be rejected.

Apple devotes much of its responsive claim construction brief to attorney arguments mischaracterizing the prior art and disparaging the inventors and plaintiff GBT. This reply brief appropriately ignores all those ad hominem arguments; it narrowly focuses on what is legally relevant—the meaning of the disputed claim terms.

## II. DISPUTED TERMS AND PROPOSED CONSTRUCTIONS

### A. "multichannel-spread-spectrum transmitter"

| *Claim Term* | *GBT's Proposed Construction* | *Apple's Proposed Construction* |
|---|---|---|
| "multichannel-spread-spectrum transmitter"<br><br>Claims 5, 7 | "User equipment that uplinks multichannel-spread spectrum signals to a base station." | No construction necessary. Alternatively, "a transmitter for communicating a multichannel spread-spectrum signal." |

Apple argues erroneously that the term has a broad plain and ordinary meaning without focusing upon the intrinsic patent language which both expressly discloses the term "multichannel spread-spectrum transmitter" means the transmitter in the user equipment to transmit from the user to the base station (the uplink), and does not disclose or describe a downlink transmission.

Under settled law, where the inventor has acted as his own lexicographer, "the inventor's lexicography governs." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (*en banc*);

*Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication."). *Alloc, Inc. v. International Trade Commission*, 342 F.3d 1361, 1368 (Fed. Cir. 2003) (The inventor acts as his own lexicographer when he defines a claim term in the specification expressly, or implicitly by "consistently and clearly us[ing] a term in a manner either more or less expansive than its general usage in the relevant art, thereby expanding or limiting the scope of the term in the context of the patent claims."); *Bell Atlantic Network Servs., Inc. v. Covad Communications Grp.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001). In making that inquiry, the Federal Circuit determines whether a patentee throughout the entire patent specification has used a claim term in a manner consistent with only a single meaning. If that is the case, giving claim construction effect to that specialized meaning does not violate the prohibition against importing limitations from the specification into a claim. Under that circumstance the more narrow meaning selected as the claim construction is the patentees intended meaning of the claim term. *Phillips*, 415 F.3d at 1321.

Here, the specification repeatedly and consistently discloses the multichannel-spread-spectrum transmitter as a part of the user equipment for transmission of uplink signals. (3:50-52; 3:52-55; Figure 3; 3:8-9). Apple argues that nothing in the specification clearly expresses an intent by the patentees to be their own lexicographers. (Resp. Br. at 9). In support, Apple asserts that the specification only discloses a preferred embodiment of the invention. (Resp. Br. at 9). While the specification does say that the "preferred embodiment" is from user to base station, the specification expressly uses the claim term, "multichannel spread-spectrum transmitter" to describe the link from the user to a different device at a bases station that the inventors call a "multichannel spread-spectrum receiver". (3:50-56). More importantly, the specification ***only*** describes the uplink transmission and does not ever describes the downlink. *Wang Labs., Inc. v. Am. Online, Inc.*, 197 F.3d 1377, 1381-84 (Fed. Cir. 1999) (construing term "frame," which ordinarily could be character based or bit-based to only the character-based system because the narrower construction was the only one described and enabled by the specification).[1] Thus, any variations of the preferred

---

[1] *See also Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1382-1383 (Fed. Cir. 2011)

McKool Smith Hennigan, P.C.
los angeles, california

embodiment contemplated by the specification are variations to the "spread spectrum ***packet system***" of the uplink. (9:40-46) (emphasis added).[2]

Apple further disputes GBT's contention that claim differentiation limits the "multichannel spread-spectrum transmitter" as used in claims 5-7 to the uplink user equipment. (Resp. Br. at 9). Yet Apple admits that "claim 1 has a substantially different scope from claims 5 and 7…." (Resp. Br. at 10). Claim 1 recites a "multichannel spread-spectrum system," which includes both the limitations for an uplink multichannel spread-spectrum transmitter and base station receiver. Because claim 5 and 7 recite only a "multichannel spread-spectrum transmitter," which is only the uplink portion of the multichannel spread-spectrum system, it would make no sense if those claims also covered a base station downlink transmitter.

Finally, Apple relies on expert testimony of both GBT's expert (Dr. Vojcic) and its own expert (Dr. Acampora). To the extent this expert testimony has any relevance, it supports GBT's construction. First, Apple ignores Dr. Vojcic's deposition testimony wherein he explained in general terms that one reading the patent would understand the transmitter claim to be limited to an uplink transmitter because different problems would need to be overcome for a downlink transmitter to work which the '793 patent does not discuss or enable:

---

(affirming narrow construction of "keyboardless" to mean "without a mechanically integrated keyboard," instead of simply "not requir[ing] the use of a separate keyboard," based on the specification describing no device having a mechanically integrated keyboard but disclosing the use of an externally connected keyboard instead.); *SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems*, 242 F.3d 1337, 1339-44 (Fed. Cir. 2001) (holding that claims were limited to a particular "lumen" arrangement in part because the common specification of the patents described the invention numerous times as having an annular lumen); *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300-01 (Fed. Cir. 2004)(affirming narrow construction of "group" to a subset of all subscribers, where specification consistently narrowed the term to that subset); *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1581 (Fed. Cir. 1997) (limiting the claim term "passage" as narrower than its ordinary meaning where all references in the written description were described narrowly and used to distinguish the prior art); *Toro Co. v. White Consol. Indus.*, 199 F.3d 1295, 1301-02 (Fed. Cir. 1999) (narrowing the term "including" to mean "requiring" where the invention is described throughout the specification as requiring a unitary structure).

[2] Both inventors agreed that the problems presented by the uplink and downlink are different, and that the specification would need to show more to describe a downlink (base station to user) transmitter. *See* (Declaration of Jeffrey Huang ("Huang Decl.") Ex. 2, Garodnick Tr. 213:10-214:9); (Huang Decl. Ex. 3, Schilling Tr. 101:25-104:21).

> Q: So reading the patent, is it your view what the applicant regarded as his invention was just the uplink, correct?
>
> A: That is correct.
>
> ...
>
> Q: You said earlier, I believe, if that patentee really intended to claim the downlink, in essence, he would have had to have described the downlink and he didn't, is that right?
>
> A: He would have to describe the downlink, the concept of how his sharing of headers or distinguishing headers and data would be done in the downlink, ***because it really is a different problem than the uplink***.

(Huang Decl., Ex. 1, Vjocic Tr. 51:22-25; 53:8-16) (emphasis added). As Dr. Vojcic confirmed, uplink and downlink transmitters are not simply interchangeable. Dr. Vojcic then went on to explain, for example, the operational problems, in part due to privacy concerns, that would arise from making a system in which multiple users listened to a single header frame and why, therefore, one of ordinary skill in the art, reading the '793 patent, would understand the transmitter claimed to only perform uplink transmissions. This is not a red herring, as Apple describes. (Resp. Br. at 12.) The testimony illuminates what one of ordinary skill in the art would understand when reading the '793 patent.

Second, Apple argues that Dr. Vjocic "concedes" that the ordinary meaning of the claim term might not be limited to "up or downlink." (Resp. Br. at 8). Yet Apple fails to cite the most relevant part of Dr. Vjocic's testimony: namely, "***outside the context of the patent***, that word transmitter wouldn't be limited to a specific direction." (Huang Decl., Ex. 1 Vjocic Tr. 17:19-22) (emphasis added); *see also* Huang Decl., Ex 1 Vjocic Tr. 19:5-7). Indeed, Apple's own expert, Dr. Acampora, testified that he believes the meaning of the term "transmitter" to one skilled in the art depends on the context in which it is used ***and does not have a plain and ordinary meaning to persons skilled in the art***. (Huang Decl., Ex. 4, Acampora Tr. 45:10-12). The context, here, of the '793 patent, and thus the meaning is limited to the uplink user equipment.

**B. "data channel"**

| ***Claim Term*** | ***GBT's Proposed Construction*** | ***Apple's Proposed Construction*** |
|---|---|---|

McKool Smith Hennigan, P.C.
los angeles, california

| "data channel"<br><br>Claims 5, 6, 7 | "a continuous data stream during a frame, that carries a data-sequence signal" | "A communication channel able to carry data." |
|---|---|---|

Apple's arguments regarding the disputed terms "data channel" and "spread-spectrum data channel" center on its assertion that the singular term "channel" has, in isolation, a well-known meaning in the wireless communications art. (Resp. Br. at 13). By focusing narrowly on the term "channel,"Apple argues that GBT's proposed construction for "data channel" and "spread-spectrum data channel" cannot be correct because they conflict with the meaning of the term "transmission channels" in a completely different patent—U.S. Patent No. 5,896,374 ("the '374 patent"). (Resp. Br. at 13-14). Apple's position is legally incorrect. *See Vitronics Corp*, 90 F.3d 1584 (Extrinsic evidence may not be used to vary or contradict claim language). Under the law, Apple's assertion that under GBT's proposed construction, "the 'transmission channels' shown in the '374 patent are not 'channels' at all", (Resp. Br. at 14), entirely lacks relevance. Simply put, Apple's substitution of the term "channel" in the unrelated '374 patent with the disputed term "data channel" used in the '793 patent is not legally relevant to the construction of "data channel" in the '793 patent. By focusing on this unrelated patent, Apple's proposed construction "risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." *Phillips*, 415 F.3d at 1321.

Apple further argues that "GBT's proposed construction erroneously confuses a channel with the information that a channel carries." (Resp. Br. at 14). In support, Apple and its expert argue that the "'793 patent clearly equates a channel with a *conduit*, rather than the data itself." (Resp. Br. at 14). Apple's expert, Dr. Acampora, goes one step further in saying that Figure 2 of the '793 patent only shows signals and does not show any channels. (Huang Decl., Ex. 4 Acampora Tr. 107:9-24). Contrary to the position of Apple and its expert, the specification plainly states that Figure 2 illustrates spread-spectrum channels: "Fig. 2 shows a spread-spectrum signal ***employing multiple parallel spread-spectrum channels***, having a header for timing on only the ***first spread-spectrum channel***." (3:5-7).

McKool Smith Hennigan, P.C.
los angeles, california

In contrast to Apple's proposed construction, GBT's proposed construction for "data channel" follows directly from the specification and Figures 1 and 2. The specification states that "[a] typical frame of the spread-spectrum signal, transmitted as a packet or frame ***of a continuous signal***, is shown in FIG. 1…" (1:20-22) (emphasis added). And "instead of replicating the frame format shown in FIG. 1 for each spread-spectrum channel, only one frame contains headers while the other spread-spectrum channels sent in parallel with different chip-sequence signals ***devote their entire time for data***, as shown in FIG. 2." (3:26-31) (emphasis added). Therefore, as shown in Figures 1 and 2 below, the first channel carrying the header frame in Figure 2 and the channel depicted in Figure 1, is a ***continuous signal***. Similarly, the other spread-spectrum channels illustrated in Figure 2 show continuous data transmission within a frame with no breaks or idle periods, such that each ***devote the entire time for data***.[3] Thus, the term "data channel" as used in the '793 patent excludes channels containing breaks or null periods within a frame, and must mean "a continuous data stream during a frame, that carries a data-sequence signal."

FIG. 1
PRIOR ART

FIG. 2

The only support from the intrinsic evidence that Apple cites for the idea that a "data channel" in the '793 patent includes breaks or idle periods within a frame are the ellipses ("…") shown in Figure 2. According to Apple, these ellipses indicate that "the contents of the data

[3] Despite the fact that Figure 2 shows no breaks or idle periods in any of the channels, Apple's expert, Dr. Acampora testified that he could not think of a way to re-draw the channels in Figure 2 to be unambiguously continuous, besides writing the word "continuous" on the drawing. (Huang Decl., Ex. 4 Acampora Tr. 122:22-124:7).

McKool Smith Hennigan, P.C.
los angeles, california

channels are open-ended…" (Resp. Br. at 16). But the ellipses do not indicate breaks or idle periods within a frame. Rather, it is plain that the ellipses indicate that the data channels can include other types of control information associated the data like the FEC, CRC, and APC bits listed.[4] Thus, instead of reading the claim language itself in light of the specification, Apple improperly seeks to divorce one element of Figure 2 from the rest of the claim language and specification, while applying its mis-construction across all of the claims in a vacuum.

**C. "spread-spectrum data channel"**

| *Claim Term* | *GBT's Proposed Construction* | *Apple's Proposed Construction* |
|---|---|---|
| "spread-spectrum-data channel"<br><br>Claims 5, 6, 7 | "A continuous data stream during a frame, generated by processing a data-sequence signal (other than a header frame) with a chip-sequence signal." | "A channel, without a header, that is generated by processing a data-sequence signal by a respective chip-sequence signal." |

As discussed above, Apple does not provide a separate argument for its construction of "spread-spectrum data channel" that does not include the word "channel." Apple's proposed construction should be rejected for the same reasons as its proposed construction for "data channel," discussed in § II.B, *supra*, *Phillips*, 415 F.3d at 1321.

**D. "spread-spectrum header channel"**

| *Claim Term* | *GBT's Proposed Construction* | *Apple's Proposed Construction* |
|---|---|---|
| "spread-spectrum-header channel"<br><br>Claims 5, 6, 7 | "A continuous ~~data~~ stream <u>of bits</u> during a frame, generated by processing the header frame with a first chip-sequence signal." | "A channel generated by processing the header frame with a first chip-sequence signal." |

The parties' dispute regarding "spread-spectrum header channel" again centers on whether the data stream on the channel is continuous during a frame. Apple's broad construction, which conceivably could include null or idle intervals where no data is transmitted, should be rejected. As

---

[4] Apple also points to the deposition testimony of Messers Garodnick, Vojcic, and Schilling to support its proposed construction that the term "data channels" is broad enough to carry anything or even nothing at all. (Resp. Br. at 16). However, the only thing each testified to was that it was unclear what the ellipses meant, but that control information could is included in the data channel. *Id.*

McKool Smith Hennigan, P.C.
los angeles, california

discussed above in § II.B, *supra*, the specification states that "[a] typical frame of the spread-spectrum signal, transmitted as a packet or frame ***of a continuous signal***, is shown in FIG. 1…" (1:20-22) (emphasis added). Thus, the specification directly supports GBT's construction.

Apple points out that the use of the phrasing "data stream" in this instance can be confusing. Accordingly, GBT modifies its proposed construction from "a continuous data stream during a frame…" to "a continuous ***stream of bits*** during a frame…" This avoids the potential confusion while staying within the meaning of the term read in light of the specification.

**E. "chip sequence signals" and "parallel chip sequence signals"**

| *Claim Term* | *GBT's Proposed Construction* | *Apple's Proposed Construction* |
|---|---|---|
| "chip sequence signals" and "parallel chip sequence signals"<br><br>Claims 5, 6, 7 | **chip sequence signals:**<br>"Signals or codes, which are orthogonal to other signals or codes, processed with a data-sequence signal to generate a spread-spectrum channel"<br><br>**parallel chip sequence signals:**<br>No construction necessary due to the GBT's proposed construction of "chip-sequence signals," and because "parallel" has an ordinary and customary meaning.<br><br>However, if construed:<br>"Signals or codes, which are orthogonal to other signals or codes, processed with data-sequence signals to generate a spread-spectrum channels that can each be sent simultaneously." | **chip sequence signal:**<br><br>A signal that is a sequence of chips.<br><br>**parallel chip sequence signals:**<br><br>"Chip-sequence signals that can be used to distinguish channels from each other." |

Apple does not deny that its proposed construction is vague and unhelpful. Nor does Apple deny that its proposed construction is so broad that it would essentially cover ***any*** sequence of bits. (Resp. Br. at 18). For this reason alone, Apple's proposed construction should be rejected.

Unlike Apple's proposed construction, GBT's proposed construction follows from the specification, which states that each chip sequence signal is generated from a respective code out of

McKool Smith Hennigan, P.C.
los angeles, california

a series of codes. (4:14-20). The specification goes on to require that "[e]ach of the chip-sequence signals of the plurality of chip-sequence signals has low correlation with other chip-sequence signals in the plurality of chip-sequence signals, and is preferably orthogonal to the other chip-sequence signals in the plurality of chip-sequence signals. (6:23-29). It also states that "[e]ach chip-sequence signal in the plurality of chip-sequence signals is different, preferably orthogonal to the others, to avoid or reduce interference." (8:13-15). This is because "[e]ach of the plurality of data-matched filters 71-78 has an impulse response matched to a chip-sequence signal of a respective one of the plurality of chip-sequence signals." (7:65-8:1). Therefore, if the chip-sequence signals were not orthogonal, the data-matched filters would not be able to distinguish between their respective chip-sequence signals. This is further supported by the fact that the specification does not describe how to practice the invention without the use of orthogonal chip-sequence signals. *See e.g.* (8:62-9:39) ("Different sectors and different cells should use different orthogonal chip sequences to minimize interference between sectors and cells."). *Phillips*, 415 F.3d at 1321. Thus, Apple's proposed construction fails to capture what the inventors claimed as their invention.

**F. "product devices"**

| ***Claim Term*** | ***GBT's Proposed Construction*** | ***Apple's Proposed Construction*** |
|---|---|---|
| "product device(s)"<br>Claim 7 | "a device, including EXCLUSIVE-OR gates, that performs a multiplication operation" | "A device that performs a multiplication operation." |

Apple does not contest GBT's proposed construction, except that Apple incorrectly argues that GBT seeks "to ***require*** that a product device must include an 'EXCLUSIVE-OR gate.'" (Resp. Br. at 19). Apple is wrong; GBT's proposed construction only ***includes*** EXCLUSIVE-OR gates among the possible devices that performs a multiplication, it does not require it.

**G. "synchronizing the plurality of data channels"**

| ***Claim Term*** | ***GBT's Proposed Construction*** | ***Apple's Proposed Construction*** |
|---|---|---|
| "synchronizing the plurality of data channels"<br>Claims 5, 7 | "aligning in time two or more data channels" | "Timing the two or more data channels using the header." |

Apple does not deny that its proposed construction is too broad to make any sense. Instead

McKool Smith Hennigan, P.C.
los angeles, california

Apple again attempts to use the specification of a completely different patent (here, U.S. Patent No. 5,896,374) in its arguments against GBT's proposed construction for this term in the '793 patent, (Resp. Br. at 19). Apple also asserts that the "intrinsic record does not support GBT's construction." (Resp. Br. at 20).

GBT's proposed construction for "synchronizing the plurality of data channels" follows directly from the claim language and specification: "[f]rom timing the data from the header in a single channel, ***data in all channels are timed***" and from receiving the timing and control signals from the processor, the plurality of data channels are synchronized "***to the header*** on the first data channel." (6:17-22) (emphasis added). Because ***all*** data channels are synchronized, or timed, ***to*** the header in a single channel, all of the data channels are aligned (in time) ***together***, to one another. Thus, the meaning of "synchronizing the plurality of data channels," read in light of the specification, is "aligning in time two or more data channels."

Apple argues that synchronizing "does not require the start of the header bits and the start the of data bits to be 'aligned'…" (Resp. Br. at 20). This argument misses the point. GBT's proposed construction requires the data channels to be aligned to one another, which is supported by the specification. In contrast, Apple's proposed construction would encompass situations where the timing of the data channels are not timed to (aligned) to each other at all, or in a completely arbitrary fashion -- so long as the header is used in some way in the process. For example, the header could be used as a seed in a random number generator that randomly assigns timing to each of the one or more data channels. Thus, Apple's proposed construction is legally incorrect.

**H. "spread spectrum means…"**

| ***Claim Term*** | ***GBT's Proposed Construction*** | ***Apple's Proposed Construction*** |
|---|---|---|
| "spread spectrum means coupled to the plurality of data channels for spread spectrum processing the plurality of data sequence signals by a plurality of chip sequence signals respectively thereby generating a plurality of spread spectrum channels the plurality of spread spectrum channels including a | ***Function***: spread spectrum processing the plurality of data sequence signals by a plurality of chip sequence signals respectively. (Disputed) | ***Function:*** spread-spectrum processing the plurality of data-sequence signals by a plurality of chip-sequence signals, respectively, thereby generating a plurality of spread-spectrum channels, the plurality of spread-spectrum channels including a spread-spectrum-header channel generated by |

McKool Smith Hennigan, P.C.
los angeles, california

| | | |
|---|---|---|
| spread spectrum header channel generated by processing the header frame with a first chip sequence signal and a plurality of spread spectrum data channels"<br><br>Claim 5 | ***Corresponding Structure***: "Product devices 51-58 and equivalents thereof." | processing the header frame with a first chip-sequence signal, and a plurality of spread-spectrum-data channels. (Disputed)<br><br>***Corresponding Structure:*** Chip sequence generator 39, product devices 51, 52, 53, and 58, processor 27, sync blocks 32, 33, and 38, header device block 46, and lines connecting them. |

Apple argues that "GBT seeks to truncate the recited function to omit its recited 'generating' function." (Resp. Br. at 21). But the "generating" function is the ***result, or output*** of the processing of the spread-spectrum means. Apple argues that the "claim expressly recites a functional limitation of 'generating' -- not just a result or outcome, but a functional activity that the recited 'means' performs." *Id.* Apple is wrong: The claim language itself plainly states that the "spread spectrum means coupled to the plurality of data channels ***for*** spread spectrum processing the plurality of data sequence signals by a plurality of chip sequence signals respectively ***thereby*** generating a plurality of spread spectrum channels…" The spread-spectrum processing is what performs the generating, because the processing ***thereby*** generates, or outputs, the plurality of spread spectrum channels. This is supported by the specification, which states that "[a]t the ***output of the plurality of the product devices*** 51-58 is a plurality of spread-spectrum channels, respectively." (6:38-42).

Despite Apple's recitation of the incorrect function, Apple contends that even under the correct function as GBT proposes, "the described product devices, alone, could not achieve the recited function…" (Resp. Br. at 21). But as the specification states, the spread-spectrum means is illustratively shown in Figure 3 as a plurality of product devices 51-58. (5:43-45). As Figure 3 shows, the ***inputs*** to the spread-spectrum means are provided by the data channels and chip-sequence generator, the product devices 51-58 ***performs processing*** of those inputs, and then ***outputs*** spread-spectrum channels. Thus, under the correct recited function, the structure for just processing the plurality of data channels by a plurality of chip sequence signals is limited to "product devices 51-58 and equivalents thereof."

McKool Smith Hennigan, P.C.
los angeles, california

Accordingly, the chip-sequence generator 39 is an ***input*** to the processing means, and does not perform the recited function, and the processor 27, sync blocks 32-38, and header device block 46, are all structures that provide ***inputs*** to the processing means, and likewise do not perform the recited function. *See* (6:14-22). *Wenger*, 239 F.3d at 1233.

Finally, Apple seeks to include the "lines connecting them" as additional, extraneous structure. But as Apple admits, the lines ***do not perform the recited function***. (Resp. Br. at 21) ("the lines are necessary ***for communication*** between the structures so that they can perform the recited function." (emphasis added)). The "lines" do not perform the recited ***function***. Instead "the lines" merely illustrate how the product devices 51-58 obtain their inputs and where the outputs are sent. In fact, Apple agrees with GBT's proposed construction for the "means for generating the plurality of chip sequence signals," acknowledging that the "lines" do not perform the recited function there. *See* § II.K, *infra*. The "lines" do not perform the recited function here either. Thus, Apple's proposed construction should be rejected.

### I. "combiner means..."

| ***Claim Term*** | ***GBT's Proposed Construction*** | ***Apple's Proposed Construction*** |
|---|---|---|
| "combiner means coupled to said spread spectrum means for algebraically combining the plurality of spread spectrum channels as a multichannel spread signal"<br><br>Claim 5 | ***Function***: algebraically combining the plurality of spread spectrum channels as a multichannel spread spectrum signal. (Agreed)<br><br>***Corresponding Structure***: "A combiner 45 and equivalents thereof." | ***Function:*** algebraically combining the plurality of spread-spectrum channels as a multichannel-spread-spectrum signal. (Agreed)<br><br>***Corresponding Structure:*** Lines from product devices 51, 52, 53, 58 to combiner block 45, and line to product device 48. |

Apple argues that "GBT has no basis for disputing Apple's construction." (Resp. Br. at 23). But Apple does not contest that its proposed construction points to structure that includes only the ***lines*** from the product devices to the correct structure (*i.e.*, the combiner block), ***and the line*** to another product device. As such, Apple only identifies ***"lines"*** as the structure in the specification for performing the combining function. Plainly, lines do not combine anything, and Apple's

McKool Smith Hennigan, P.C.
los angeles, california

proposed construction cannot be correct.[5]

Apple attempts to clarify that it "proposed including the lines to the combiner block, which would suggest to a person of skill in the art that the 'combiner' operation is neither concatenation nor complex multiplication." (Resp. Br. at 22). But Apple provides no evidence or explanation for that statement. As discussed in the spread-spectrum means section, the product devices 51-58 also have "lines" to them, and yet the product devices perform "complex multiplication."

Furthermore, Apple is wrong in arguing that GBT's proposed structure does not provide sufficient information to understand what the 'combiner' performs. (Resp. Br. at 22). The specification states that the combiner 45 of Figure 3 algebraically combines the plurality of spread-spectrum channels, and outputs the combined signal as a multichannel-spread-spectrum signal. (6:54-56). And "[p]referably, the combiner 45 combines the plurality of spread-spectrum channels linearly, although some non-linear process may be involved without significant degradation in system performance." (6:56-60). Thus, the combiner is not limited to an "adder," as Apple asserts. *Phillips*, 415 F.3d at 1323.

**J. "carrier means..."**

| *Claim Term* | *GBT's Proposed Construction* | *Apple's Proposed Construction* |
|---|---|---|
| "carrier means coupled to said combiner means for transmitting the multichannel spread spectrum signal over a communications channel at a carrier frequency"<br><br>Claim 5 | ***Function***: transmitting the multichannel spread spectrum signal over a communications channel at a carrier frequency. (Agreed)<br><br>***Corresponding Structure***: "A transmitter-carrier subsystem 50 and equivalents thereof." | ***Function:*** Agreed<br><br>***Corresponding Structure:*** Transmitter-carrier subsystem 50 comprised of oscillator 49 and multiplier device 48 for shifting a signal to a carrier frequency, a filter 58 for filtering the shifted signal, a power amplifier 59, and antenna 60. |

[5] *See also* § II.II.K, *infra.*, Apple has agreed with GBT's proposed construction for the "means for generating the plurality of chip sequence signals," acknowledging that the "lines" do not perform the recited function there. The "lines" do not perform the recited function here either.

McKool Smith Hennigan, P.C.
los angeles, california

The specification states that the transmitter-carrier subsystem means is embodied as a transmitter-carrier subsystem 50. (5:66-6:1). Apple argues that the corresponding structure must be limited to the exact configuration of the example embodiment in Figure 3, when instead, the specification makes clear that "the transmitter-carrier subsystem 50 ***may*** include an oscillator 49 and multiplier device 48 for shifting a signal to carrier frequency, a filter 58 for filtering the shifted signal, and a power amplifier 59 and/or other circuitry as is well known in the art for transmitting a signal over a communications channel." (6:1-6). And the specification further elaborates that "[t]he transmitter-carrier subsystem 50 of the multichannel spread-spectrum transmitter includes appropriate filters, power amplifiers and matching circuits coupled to antenna 60." (6:61-67).

Thus, the specification identifies the transmitter-carrier subsystem 50 as being comprised of (a) filters, with an example of filter 58 -- but not necessarily limited to a single filter; (b) power amplifiers, with an example of power amplifier 59 -- but not necessarily limited to a single power amplifier; (c) matching circuits, with an example of oscillator 49 and multiplier device 48 -- but not necessarily limited to matching circuits of this exact configuration; and (d) possibly other circuitry, such as a hard limiter (*See* 6:67-7:2)-- which does not appear at all in Figure 3. Thus, the specification is clear that the corresponding structure that performs the carrier means function is the transmitter-carrier subsystem 50, which could be configured in a variety of the disclosed ways. *See Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361, 1369 (Fed. Cir. 2005); *Versa Corp. v. Ag-Bag International Ltd.*, 392 F.3d 1325, 1329 (Fed. Cir. 2004) (reaffirming that "when multiple embodiments in the specification correspond to the claimed function, proper application of § 112, ¶ 6 generally reads the claim element to embrace each of those embodiments").

**K. "means for generating the plurality of chip sequence signals" (Now Undisputed)**

| ***Claim Term*** | ***GBT's Proposed Construction*** | ***Apple's Original Proposed Construction*** |
|---|---|---|
| "means for generating the plurality of chip-sequence signals"<br><br>Claim 6 | ***Function***: generating the plurality of chip-sequence signals. (Agreed)<br><br>***Corresponding Structure***: "A chip sequence generator and equivalents thereof." | ***Function:*** Agreed<br><br>***Corresponding Structure:*** Chip sequence generator 39 and lines carrying signals to product devices 51, 52, 53, 58. |

McKool Smith Hennigan, P.C.
los angeles, california

Instead of steadfastly attempting to include the extraneous "lines" as additional structure for each of the means-plus-function claim terms, Apple has changed course with regard to just the "means for generating the plurality of chip sequence signals" and has agreed to GBT's correct proposed structure. (Resp. Br. at 23, n. 4). However, Apple does not explain why it agrees with GBT here, that the lines ***are*** extraneous and ***do not*** perform the recited function, but continues to contend the lines perform the recited functions of the other disputed means-plus-function terms.

**L. "header"(Now Undisputed)**

| ***Claim Term*** | ***Agreed Construction*** |
|---|---|
| "header"<br>Claims 5, 7 | "a sequence of bits or symbols, which include a pre-defined sequence of bits or symbols (pilot)." |

Despite Apple's continued effort to manufacture a dispute, GBT has agreed with Apple's proposed construction for this term. But in seeking "[t]o be clear and avoid dispute about the meaning of the agreed construction," (Resp. Br. at 25), Apple cites to its expert, Dr. Acampora for support of its original proposed construction, which is the construction that parties now are in agreement upon. Yet as Dr. Acampora testified during his deposition, "header" was the one term where Dr. Acampora ***disagreed*** with Apple's construction. (Huang Decl., Ex. 4 Acampora Tr. 5:19-8:13). Dr. Acampora testified that in his opinion, header as used in the '793 patent would be a known sequence of bits or symbols. *Id.* Both GBT and Apple agree on the construction above, and disagree with the construction offered by Apple's expert.

## III. CONCLUSION

For the foregoing reasons, GBT respectfully requests that the Court adopt GBT's proposed claim constructions.

DATED: June 7, 2013

MCKOOL SMITH HENNIGAN, P.C.

By */s/ Lawrence M. Hadley*
Lawrence M. Hadley

Attorneys for Plaintiff, GOLDEN BRIDGE TECHNOLOGY, INC.

McKool Smith Hennigan, P.C.
los angeles, california

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 7, 2013 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. Any other counsel of record will be served by electronic mail, facsimile, U.S. Mail and/or overnight delivery.

*/s/ Lawrence M. Hadley*

McKool Smith Hennigan, P.C.
los angeles, california