COOLEY LLP
TIMOTHY S. TETER (171451) (teterts@cooley.com)
LOWELL D. MEAD (223989) (lmead@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

Attorneys for Defendant
Apple Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Golden Bridge Technology Inc., <br><br> Plaintiff, <br><br> v. <br><br> Apple Inc., <br><br> Defendant. | Case No. 5:12-cv-04882-PSG <br><br> **APPLE INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF NO WILLFULNESS** <br><br> Date: March 4, 2014 <br> Time: 10:00 a.m. <br> Courtroom: 5, 4th Floor <br> Judge: The Hon. Paul S. Grewal |

REDACTED/PUBLIC VERSION OF DOCUMENT SOUGHT TO BE SEALED

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

Case No. 5:12-cv-04882-PSG
1213212 v1/HN

**APPLE'S MSJ OF NO WILLFULNESS**

RELIEF REQUESTED ................................................................................................................. 1
MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1
I. INTRODUCTION ......................................................................................................... 1
II. STATEMENT OF ISSUES TO BE DECIDED ........................................................... 2
III. STATEMENT OF FACTS ............................................................................................ 2
    A. GBT Did Not Believe that the '793 Patent Covers HSUPA. ............................... 2
    B. GBT Did Not Provide Apple Notice of the '793 Patent. ...................................... 3
    C. GBT Accused the Baseband Chipset, which Apple Did Not Design. ................... 4
    D. GBT Abandoned Its Infringement Theory after the Close of Discovery. .............. 5
    E. Apple Presented Compelling Noninfringement and Invalidity Defenses. ............. 5
IV. LEGAL STANDARDS ................................................................................................. 6
    A. Summary Judgment ............................................................................................... 6
    B. Willfulness is an "Intrusive and Inflammtory Issue" that is Particularly Appropriate for Summary Judgment .................................................................... 7
V. ARGUMENT ................................................................................................................. 8
    A. GBT Cannot Show, by Clear and Convincing Evidence, that Apple was "Objectively Reckless." ......................................................................................... 8
    B. GBT Cannot Show, by Clear and Convincing Evidence, that a Risk Was Either Known or So Obvious that it Should have Been Known. .......................... 9
VI. CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Advanced Fiber Techs. Trust v. J & L Fiber Services, Inc.*,
  2010 WL 3703048 (N.D. N.Y. Sept. 13, 2010), *aff'd*, 674 F.3d 1365 (Fed. Cir. 2012) ........... 7

*Anascape, Ltd. v. Microsoft Corp.*,
  2008 WL 7182476 (E.D. Tex. Apr. 25 2008) ................................................................. 9

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*,
  682 F.3d 1003 (Fed. Cir. 2012) ........................................................................... 7, 8, 9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................. 7

*Cordance Corp. v. Amazon.com, Inc.*,
  2009 WL 2257829 (D. Del. Jul. 29 2009) ................................................................... 9

*DePuy Spine v. Medtronic Sofamor Danek*,
  567 F.3d 1314 (Fed. Cir. 2009) ............................................................................. 7, 9

*Exigent v. Atrana Solutions*,
  442 F.3d 1301 (Fed. Cir. 2006) ................................................................................ 7

*Internet Machines LLC v. Alienware Corp.*,
  No. 6:10-cv-23, 2013 WL 4056282 (E.D. Tex. June 19, 2013) .................................. 8

*Monolithic Power Sys., Inc. v. O2 Micro Intern. Ltd.*,
  2010 WL 583960 (N.D. Cal. Feb. 16, 2010) .............................................................. 7

*Netscape Comm. Corp. v. Valueclick, Inc.*,
  2010 WL 374396 (E.D. Va. Jan. 29, 2010) ................................................................ 7

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  C.A. No. 08-542-SLR, 2009 WL 2742750 (D. Del. Aug. 26, 2009) ...................... 1, 10

*In re Seagate Tech.*,
  497 F.3d 1360 (Fed. Cir. 2007) (en banc) ..................................................... 1, 7, 8, 10

*Spine Solutions, Inc. v. Medtronic Sofamor Danek U.S.A., Inc.*,
  620 F.3d 1305 (Fed. Cir. 2010) ................................................................................ 9

*The Dutch Branch of Streamserve Dev. AB v. Exstream Software, LLC*,
  C.A. No. 08-343-SLR, 2009 WL 2705932 (D. Del. Aug. 26, 2009) ........................... 1

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
  617 F.3d 1296 (Fed. Cir. 2010) ................................................................................ 7

Case No. 5:12-cv-04882-PSG
1213212 v1/HN
ii.
APPLE'S MSJ OF NO WILLFULNESS

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

# TABLE OF AUTHORITIES
## CONTINUED

**OTHER AUTHORITIES**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**PAGE(S)**

Fed. R. Civ. P. 56 (c) ............................................................................................................... 6

Patent Rule 3-1 .......................................................................................................................... 5

PLEASE TAKE NOTICE that on March 4, 2014 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Paul S. Grewal, Magistrate Judge of the United States District Court for the Northern District of California, there will be a hearing on Defendant Apple Inc.'s ("Apple") motion for summary judgment of no willfulness.

## RELIEF REQUESTED

Apple requests that the Court enter summary judgment that Apple has not willfully infringed claims 5, 6, and 7 of the '793 patent.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

As Judge Robinson observed, willfulness "is an intrusive and inflammatory issue to discover and try." *Robert Bosch LLC v. Pylon Mfg. Corp.*, C.A. No. 08-542-SLR, 2009 WL 2742750, at *1 n.3 (D. Del. Aug. 26, 2009).[1] Willfulness requires proof by clear and convincing evidence of both an objective and a subjective prong, neither of which are met in this case. The objective prong presents a threshold question of law that the Court decides: whether the accused infringer "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."[2] Apple's strong noninfringement and invalidity defenses require a finding of no willfulness under the objective prong; GBT abandoned its original infringement theory after the close of discovery, and attempted to replace it with a new theory that has conflicts with the Court's claim construction and has no support in the record. Under the circumstances, no "objectively high likelihood" exists that the '793 patent is valid and infringed, and summary judgment is appropriate.

The subjective prong asks whether "this objectively-defined risk ... was either known or so obvious that it should have been known to the accused infringer."[3] No reasonable jury could find for GBT on the subjective prong. GBT accuses a tiny fraction of baseband processors that

---

[1] *See also The Dutch Branch of Streamserve Dev. AB v. Exstream Software, LLC*, C.A. No. 08-343-SLR, 2009 WL 2705932, at *1 n.3 (D. Del. Aug. 26, 2009) (addressing "the mischief that lawyers can perpetrate with extravagant damages figures or the hyperbole that can accompany claims of willfulness").
[2] *In re Seagate Tech.*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc).
[3] *Id.*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

Case No. 5:12-cv-04882-PSG
1213212 v1/HN

1.   APPLE'S MSJ OF NO WILLFULNESS

Apple did not design. GBT did not provide Apple with notice of the '793 patent prior to suit, and even GBT and the inventor, Dr. Schilling, did not believe that the '793 patent is essential to the accused HSUPA feature. Even after filing suit, GBT failed to present a plausible response to Apple's noninfringement and invalidity defenses. Instead, GBT jettisoned its original theory after discovery closed and attempted to replace it with a new one. Summary judgment of no willfulness is required.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether GBT can show, by clear and convincing evidence, that Apple "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," where GBT itself did not believe that the '793 patent is essential to HSUPA, GBT abandoned its infringement theory, and Apple presented strong noninfringement and invalidity defenses.

2. Whether GBT can show, by clear and convincing evidence, that an "objectively-defined risk" was "either known or so obvious that it should have been known" to Apple, where GBT never gave Apple notice, never presented a viable infringment theory, and had no rebuttal to Apple's infringement defense.

## III. STATEMENT OF FACTS

### A. GBT Did Not Believe that the '793 Patent Covers HSUPA.

Plaintiff Golden Bridge Technology, Inc. ("GBT") did not develop or contribute to the optional High-Speed Uplink Packet Access ("HSUPA") feature that it accuses of infringement. (Teter Decl. Ex. 1, Yuen Tr. 141:24-142:2.) GBT focused its efforts on a different optional feature, the Common Packet Channel ("CPCH"), which was GBT's ▓▓▓▓▓▓▓▓ to the WCDMA standardization efforts. (Teter Decl. Ex. 1, Yuen Tr. 68:6-20.). The early versions of the WCDMA standard included CPCH as an optional feature, and GBT lobbied the industry to use CPCH and license GBT's portfolio. GBT's efforts failed, and the industry never used CPCH. (Teter Decl. Ex. 1, Yuen Tr. 138:14-16.)

GBT believed that the industry ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓" (Teter Decl. Ex. 1, Yuen Tr. 142:14-143:2.) In 2005, after the 3GPP standards body elected to remove CPCH from the 3G WCDMA standard, GBT sued the standards body

| | |
|---|---|
| 1 | participants for alleged antitrust violations and for rendering GBT's technology—including the |
| 2 | '793 patent that issued in 2000—"virtually valueless." (Teter Decl. Ex. 2, Complaint ¶3.) GBT |
| 3 | retained one of the '793 inventors, Dr. Schilling, to support GBT's antitrust claims. Dr. Schilling |
| 4 | performed searches for patents relating to CPCH and HSUPA. He opined that the 3GPP |
| 5 | defendants removed a technology over which GBT had patents (CPCH) in favor of technology |
| 6 | that the antitrust defendants (not GBT) developed and patented (HSUPA). (Teter Decl. Ex. 3, |
| 7 | Schilling Tr. 194:3-197:6; Teter Decl. Ex. 4, Schilling Antitrust Tr. 219:5-220:2 ("those patents |
| 8 | in HSUPA were owned by the major companies…this is what this whole lawsuit is about—that |
| 9 | you opted for a technique that you all own the patents on, rather than on the technique where the |
| 10 | patents are owned by someone else."). Neither GBT nor Dr. Schilling alleged that GBT had *any* |
| 11 | patents covering HSUPA. Dr. Schilling did not even mention the '793 patent, which did not |
| 12 | come to mind: "Didn't even think about it, probably." (Teter Decl. Ex. 3, Schilling Tr. 191:12- |
| 13 | 197:6.) |

### B. GBT Did Not Provide Apple Notice of the '793 Patent.

Shortly before the date of the hypothetical negotiation in this case, GBT offered Apple a fully paid-up license to GBT's "virtually valueless" portfolio, comprised of dozens of patents, for a one-time $7 million payment. (Teter Decl. Ex. 5.) GBT did not identify the '793 patent as valuable or infringed by Apple. GBT did not argue that the '793 patent was essential to HSUPA.

The parties did not reach agreement, and GBT hired a consulting firm, The GTT Group, to sift through GBT's patents and help GBT sell its assets. The GTT Group arranged to sell of the majority of GBT's patents to Google, but Google declined GBT's offer of the '793 patent. Thereafter, the GTT Group suggested that GBT argue that the '793 patent was essential to HSUPA. The argument was a substantial change in position. GBT and '793 inventor Schilling had argued in the antitrust case that *other* companies owned all of the HSUPA patents, rendering GBT's technology (including the '793 patent) "virtually valueless." Moreover, GBT had argued that the '793 patent ███████████████

Cooley LLP
Attorneys At Law
Palo Alto

1213212 v1/HN

APPLE'S MSJ OF NO WILLFULNESS

1  (Teter Decl. Ex. 6 (arguing that ▊

2  ▊).)[4]

GBT took the GTT Group's advice, filing suit in the Central District of California against Apple and fourteen other entities for alleged infringement of the '793 patent. GBT did not seek a temporary or preliminary injunction.

### C. GBT Accused the Baseband Chipset, which Apple Did Not Design.

GBT's complaint alleged that a diverse group of companies, each with unrelated products, infringed the '793 patent and could be joined in a single case. In an effort to justify its *en masse* filing, GBT argued that the "infringing instrumentality resides in the Baseband Processor" which was common to each of the defendants:

> Since *the infringing instrumentality resides in the Baseband Processor*, the Qualcomm witnesses and documents will be the central focus of this case, along with GBT's witnesses and documents.

(Dkt. No. 189 at 16 (emphasis added); *id.* at 1 ("[A]ll the Defendants in this case sell 3G wireless communication devices that contain the same accused product, *i.e.*, a transmitter consisting of the same identically sourced component, a Baseband Processor provided by southern California based Qualcomm Corporation.").) GBT argued that the customers were involved in "selling of the same accused product." (Dkt. No.189 at 9; *id.* at 1 ("joinder of all Defendants is proper based on their use and sale of the same accused product involving the Qualcomm Baseband Processor…").)[5] GBT also argued that any differences between the accused mobile devices sold by the baseband customers was "unrelated" to the '793 claims:

---

[4] During the claim construction briefing, GBT argued that no person of skill could possibly believe that the '793 patent and claims covered the downlink. (Dkt. Nos. 273 at 8-11, 275 at 1-4.) GBT did not inform the Court that its argument directly contradicted GBT's representations to potential licensees.

[5] Because the accused functionality resides in the baseband chipset, GBT argues that every company that purchased those chipsets is part of the same transaction or occurrence and (allegedly) infringes the '793 patent in the same way. Thus, GBT originally named fifteen separate entities as defendants, including: (1) Apple, (2) Motorola, (3) Amazon, (4) Barnes & Noble, (5) Hewlett-Packard, (6) HTC, (7) LG Electronics, (8) Lenovo, (9) Palm, (10) Pantech, (11) Research in Motion (Blackberry), (12) Samsung, (13) Sierra Wireless, (14) Sony, and (15) ZTE.

> Since all Defendants incorporate the identically sourced Qualcomm Baseband Processor into their devices, and *any differences in Defendants' mobile devices are unrelated to the limitations in the claim of the '793 patent*, under Federal Circuit law they are essentially the same accused product.

(Dkt. No. 189 at 13 (emphasis added).) GBT's infringement expert, Dr. Vojcic, agrees that the '793 invention resides in the chipset (if anywhere). In his infringement report, he expressly opined that the accused "transmitter" is the baseband chipset (baseband chip and RF transceiver chip):



(Teter Decl. Ex. 7, Vojcic Rep. ¶76; ¶95 (same); Exhibit A at 2 (same); Exhibit A at 9 (same).).

**D.  GBT Abandoned Its Infringement Theory after the Close of Discovery.**

As discussed further below and in Apple's pending motion to strike (Dkt. No. 296), GBT's October 2012 Infringement Contentions narrowly framed the case. But when discovery closed, GBT's infringement expert, Dr. Vojcic, would not support GBT's theory. He did not use GBT's infringement contentions in putting together his infringement report. (Teter Decl. Ex. 8, Vojcic Tr. 163:7-12 ("I don't think I did.").) He did not cite GBT's contentions in his report, and did not recall using it as a roadmap. (Teter Decl. Ex. 8, Vojcic Tr. 163:20-164:3 ("I said I didn't cite it, I probably didn't use it.").) Rather than adhere to GBT's infringement theory, Dr. Vojcic created a new and different theory altogether.

**E.  Apple Presented Compelling Noninfringement and Invalidity Defenses.**

Apple moved to strike GBT's new theory. (Dkt. No. 296.) But even if the Court considers GBT's new arguments, summary judgment of no wilfulness is required. As set forth in Apple's co-pending motion for summary judgment of noninfringement, Apple presented a compelling response to GBT's infringement allegations.

***First,*** as noted above, GBT abandoned the only infringement theory in its Patent Rule 3-1 contentions, conceding that it cannot prove infringement under its original theory. No reasonable jury could find infringement under GBT's original theory, because (as Apple explained to GBT in

its discovery responses), the accused DPCCH control channel and the DPDCH data channel are *not* "concatenated" to form a header frame, which all three claims require. (*See* Dkt. No. 304.)

***Second,*** under either GBT's original theory or its new theory (belatedly offered after the close of discovery and without leave of court), ██████████████████████████████ ██████████████████████████████████████████ As GBT's expert admits, the accused HSUPA standard does *not* require the claimed processor for synchronizing data channels *using timing data from the header*. ██████████████ ████████████████████████████████████████████ ██████████████████████████████████████████, and thus, the Accused Products do not infringe. (*See* Dkt. No. 304.)

***Third,*** even if the Court entertains GBT's belated new infringement theory, the Accused Products do not create the claimed "spread-spectrum header channel" from the narrowband DPCCH signal. In stark contrast to the '793 patent, which creates a spread-spectrum header channel, WCDMA takes a different approach. As a result, the Accused Products do not create the required "spread-spectrum header channel," and do not infringe. (*See* Dkt. No. 304.)

Apple also presented a compelling invalidity defense, to which GBT has no plausible defense. The Matsushita '558 patent anticipates the '793 patent-in-suit. (Dkt. No. 306.) Without a plausible response to the '558 patent, GBT argues that a rectangular box labeled "processor" is itself inventive and nonobvious, speculating that Matsushita '558 might have used cheap "pre-wired" circuitry instead. The alleged distinction between a box labeled "processor" and other types of "pre-wired" circuitry is immaterial. It cannot save the '793 patent, and it certainly does not create a case for willfulness. Summary judgment of no willfulness is required.

## IV. LEGAL STANDARDS

### A. Summary Judgment.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). Where "the nonmovant bears the burden of proof . . . the movant

need not 'produce evidence' showing the absence of a genuine issue of material fact in order to properly support its summary judgment motion." *Exigent v. Atrana Solutions*, 442 F.3d 1301, 1307-08 (Fed. Cir. 2006) (affirming summary judgment of non-infringement), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Exigent*, 442 F.3d at 1308.

### B. Willfulness is an "Intrusive and Inflammtory Issue" that is Particularly Appropriate for Summary Judgment.

GBT must prove willfulness by clear and convincing evidence. *In re Seagate Tech.*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). Willfulness requires a two-prong analysis. *Id.* The first, the "threshold" objective prong, presents a question of law for this Court. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012). The Court must determine whether the accused "infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Seagate*, 497 F.3d at 1371. If GBT fails to meet its burden on the objective prong, the second, subjective prong is irrelevant. *DePuy Spine v. Medtronic Sofamor Danek*, 567 F.3d 1314, 1336-37 (Fed. Cir. 2009) (court "need not address" the second *Seagate* prong where patent owner failed to prove the first prong).

Because willfulness is an inflammatory and distracting issue, it is particularly appropriate for summary judgment. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1313 (Fed. Cir. 2010) (affirming summary judgment of no willful infringement); *Advanced Fiber Techs. Trust v. J & L Fiber Servs., Inc.*, 2010 WL 3703048, at *30 (N.D. N.Y. Sept. 13, 2010), *aff'd*, 674 F.3d 1365, 1377-78 (Fed. Cir. 2012) (granting summary judgment of no willful infringement since the accused infringer had a reasonable belief in its claim construction supporting noninfringement and invalidity); *Monolithic Power Sys., Inc. v. O2 Micro Intern. Ltd.*, 2010 WL 583960, at *9 (N.D. Cal. Feb. 16, 2010) (granting accused infringer's motion for summary adjudication that it could not be held liable for willful infringement); *Netscape Commc'ns Corp. v. Valueclick, Inc.*, 2010 WL 374396, at *23 (E.D. Va. Jan. 29, 2010) (granting accused infringer summary judgment dismissing willful

infringement where accused infringer had no pre-suit knowledge of the asserted patent, the patentee opted not to move for a preliminary injunction as to the post-filing accused conduct and the court had granted the accused infringer summary judgment invalidating one of the asserted claims, the court finding that the accused infringer had raised legitimate defenses).

## V. ARGUMENT

### A. GBT Cannot Show, by Clear and Convincing Evidence, that Apple was "Objectively Reckless."

The objective prong considers only whether Apple's defenses to infringement are *objectively* reasonable. *Seagate,* 497 F.3d at 1371 ("The state of mind of the accused infringer is not relevant to this objective inquiry."). The Court must determine "whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent." *Bard*, 682 F.3d at 1008. In assessing the objective prong, the trial court must assess the defenses raised during the infringement proceedings:

> On remand, therefore, the court should determine, "*based on the record ultimately made in the infringement proceedings*," whether a "reasonable *litigant* could realistically expect" those *defenses* to succeed . . . If, in view of the facts, the *asserted defenses* were not reasonable, only then can the jury's subjective willfulness finding be reviewed for substantial evidence.

*Bard,* 682 F.3d at 1008 (citations omitted and emphasis added); *see also Seagate,* 497 F.3d at 1371; *Internet Machines LLC v. Alienware Corp.,* No. 6:10-cv-23, 2013 WL 4056282, at *5-6 (E.D. Tex. June 19, 2013) ("Based on the record developed during trial, PLX could have realistically expected its non-infringement and invalidity defenses to succeed.").

As set forth an Apple's pending motion for summary judgment of noninfringement and invalidity, Apple has compelling noninfringement and invalidity defenses. GBT's expert did not support GBT's infringement theory, essentially conceding it. (Dkt. No. 296.) Even if the Court permits GBT to raise a new theory after the close of discovery, GBT cannot demonstrate that the Accused Products have (1) the claimed processor for synchronizing data channels *using timing data from the header*, or (2) the claimed device for creating a "*spread-spectrum* header channel." (Dkt. No. 304.) Furthermore, Apple has presented compelling invalidity defenses, one of which

Apple has presented in its co-pending motion for summary judgment. (Dkt. No. 306.) These defenses preclude a willfulness finding. *See, e.g., DePuy Spine*, 567 F.3d at 1336-37; *Spine Solutions, Inc. v. Medtronic Sofamor Danek U.S.A., Inc.,* 620 F.3d 1305, 1319 (Fed. Cir. 2010) (where accused infringer "raised a substantial question" as to the validity, it "was not objectively reckless in relying on this defense").

**B.     GBT Cannot Show, by Clear and Convincing Evidence, that a Risk Was Either Known or So Obvious that it Should have Been Known.**

Because GBT cannot meet the objective prong, the Court need not even consider whether GBT can present substantial evidence on the subjective prong. *Bard,* 682 F.3d at 1008; *Powell,* 663 F.3d at 1236. Nonetheless, summary judgment is appropriate on the subjective prong as well. GBT did not provide any notice to Apple and cannot argue that Apple knew of the alleged risk— even GBT, despite years of mining its patent portfolio, did not believe that the '793 patent was essential to HSUPA. The '793 inventor, Dr. Schilling, searched for HSUPA patents and did not identify the '793 patent as one of them. (Teter Decl. Ex. 3, Schilling Tr. 194:3-197:6; Teter Decl. Ex. 4, Schilling Antitrust Tr. 219:5-220:2 ("those patents in HSUPA were owned by the major companies…this is what this whole lawsuit is about—that you opted for a technique that you all own the patents on, rather than on the technique where the patents are owned by someone else."). GBT argued that its portfolio (including the '793 patent) was "virtually valueless"—a statement that it would not have made if it believed that the '793 patent was essential to HSUPA. (Teter Decl. Ex. 2, Complaint ¶3.)

Moreover, GBT's letter to Apple ███████████████████████████████████████████████████████████████████████████████████████████████████. *See Anascape, Ltd. v. Microsoft Corp.*, 2008 WL 7182476, at *3-4 (E.D. Tex. Apr. 25 2008) (granting summary judgment for dismissing willfulness and ruling that notice of the parent patent is insufficient); *Cordance Corp. v. Amazon.com, Inc.*, 2009 WL 2257829, at *4-6 (D. Del. Jul. 29 2009) (granting accused infringer summary judgment dismissing willful infringement claim, finding that the accused infringer's alleged knowledge of one of the asserted patents from an office action did not suffice). No reasonable jury could find that Apple knew of any risk relating

to the '793 patent, much less that Apple met *Seagate's* subjective prong.

## VI. CONCLUSION

GBT cannot meet either prong of the *Seagate* test. Summary judgment is appropriate to remove this "intrusive and inflammatory issue"[6] from the case.

Dated: January 30, 2014

/s/ Timothy S. Teter
Timothy S. Teter (171451)
teterts@cooley.com
Lowell D. Mead (223989)
lmead@cooley.com
Cooley LLP
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

*Attorneys for Defendant Apple Inc.*

---

[6] *Robert Bosch LLC v. Pylon Mfg. Corp.*, C.A. No. 08-542-SLR, Memo. Order at 3 n.3 (D. Del. Aug. 26, 2009).

# **CERTIFICATE OF SERVICE**

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served on January 30, 2014, with a copy of this document via the Court's CM/ECF system per Local Rules. Any other counsel will be served by electronic mail, facsimile, overnight delivery and/or first class mail on this date.

By: */s/ Timothy S. Teter*

Cooley LLP
Attorneys At Law
Palo Alto

Case No. 5:12-cv-04882-PSG
1213212 v1/HN

1.

**CERTIFICATE OF SERVICE**