1
2
3
4
5
6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| GOLDEN BRIDGE TECHNOLOGY INC, | ) | Case No. 5:12-cv-04882-PSG |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **MOTIONS FOR SUMMARY** |
| v. | ) | **JUDGMENT OF INVALIDITY,** |
| | ) | **NONINFRINGEMENT, NO PRE-SUIT** |
| APPLE, INC., | ) | **DAMAGES AND DEFENDANT'S** |
| | ) | **MOTION TO STRIKE** |
| Defendant. | ) | |
| | ) | **(Re: Docket Nos. 296, 304, 306, 308)** |
| | ) | |

Plaintiff Golden Bridge Technology Inc. accuses Defendant Apple, Inc. of infringing claims 5, 6, and 7 of U.S. Patent No. 6,075,793. Before the court are three motions for summary judgment filed by Apple, as well as a motion to strike.[1] Having considered the papers and arguments of counsel, the court DENIES each motion.

## I.        BACKGROUND

This case relates to spread spectrum code division multiple access mobile technology that allows mobile wireless stations, such as cell phones, to communicate with a fixed base station.  In the mid-1990s, the 3G Universal Mobile Telecommunications System  standard was adopted, which uses CDMA technology.

---

[1] The court previously granted Apple's motion for summary judgment of no willfulness, Docket No. 311, as unopposed. *See* Docket No. 364.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

As relevant to GBT's infringement position, one aspect of the UMTS 3G standard is the use of a Dedicated Physical Control Channel to transmit pilot signals and other header information data and the use of Dedicated Physical Data Channels to transmit data between the mobile device and base station. The header channel is created by multiplying an Orthogonal Variable Spreading Factor by the DPCCH.

### 1. The Patent-in-Suit

The '793 patent was filed February 6, 1998 and issued June 13, 2000.[2] Although ultimately assigned to GBT, the claimed invention was developed by Dr. Donald Schilling and Dr. Joseph Garodnick. The patent discloses "[a] multichannel-spread-spectrum system for communicating a plurality of data-sequence signals from a plurality of data channels using parallel chip-sequence signals in which fewer than all of the channels include header information."[3]

In certain prior art spread-spectrum systems, each channel transmits pilot signals and other header information in addition to data.[4] The pilot signals and other header information are used by the receiver to synchronize the channels and piece together the received data. The '793 patent's alleged point of novelty is putting pilot signals and other header information in only one channel, leaving the other channels free to transmit only data. By eliminating the header in all but one channel, the '793 transmitter can transmit more data in the same bandwidth as other transmitters.[5] The '793 patent synchronizes the header and data channels using control and timing signals generated by a processor linked to both.[6]

---

[2] Docket No. 306-2 at 1.

[3] *Id. See also* Docket No. 273 at 2-3.

[4] *See* Docket No. 273 at 5; Docket No. 306-2 at col.1 ll.27-62, col.3 l.64-col.4 l.9, Fig. 1.

[5] *See* Docket No. 306-2 at col.2 ll.3-40.

[6] *See id.* at Fig. 3 and col.2 ll.19-25; col.6 ll.17-23; col.8 ll.27-30.

2

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Figure 3 shows a schematic of the invention:



**FIG. 3**

Claim 5 of the '793 patent requires:

> 5. A multichannel-spread-spectrum transmitter for communicating a plurality of
> data-sequence signals from a plurality of data channels using parallel chip-
> sequence signals, comprising:
> a header device, coupled to a first data channel of said plurality of data
> channels, for concatenating a header to a first data-sequence signal to generate
> a header frame;
>
> a processor, coupled to the header device and to the plurality of data channels,
> for synchronizing the plurality of data channels;
>
> spread-spectrum means, coupled to the plurality of data channels, for spread-
> spectrum processing the plurality of data-sequence signals by a plurality of
> chip-sequence signals, respectively, thereby generating a plurality of spread-
> spectrum channels, the plurality of spread-spectrum channels including a
> spread-spectrum-header channel generated by processing the header frame
> with a first chip-sequence signal, and a plurality of spread-spectrum-data
> channels;
>
> combiner means, coupled to said spread-spectrum means, for algebraically
> combining the plurality of spread-spectrum channels as a multichannel-
> spread-spectrum signal; and

3

Case No. 5:12-cv-04882-PSG
ORDER DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND
MOTION TO STRIKE

1  carrier means, coupled to said combiner means, for transmitting the
   multichannel-spread-spectrum signal over a communications channel at a
2  carrier frequency.

3       Claim 6, which depends from claim 5, requires a header channel and at least three data

4  channels. Claim 7 is independent and similar to claims 5 and 6. The primary difference is that

5  claim 7 recites the use of "product devices" for multiplying the channels with their respective chip-

6  sequence signals.[7]

7       **2.   The Prior Art**

8       The sole reference Apple relies on in its motion to establish invalidity, U.S. Patent No.

9  6,175,558, was filed on December 30, 1997 and issued January 16, 2001.[8] The '558 patent

10 discloses a multichannel CDMA transmitter that "periodically insert[s] pilot symbols into one

11 channel only of multiplexed channels."[9] The '558 patent transmits the pilot signals at timed

12 intervals while the data channels are not transmitting. Figures 12 and 13 of the patent illustrate one

13 embodiment of this scheme:

14

15

16

**Figure 12**                              **Figure 13**

17

18

19                                                  

20

21

22

23

24

25 ───────────────────────
   [7] *See* Docket No. 337 at 4.

26 [8] Docket No. 306-3 at 1.

27 [9] *Id.*

28

Case No. 5:12-cv-04882-PSG
ORDER DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND
MOTION TO STRIKE

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Figure 12 shows a schematic of one embodiment and Figure 13 shows the signals produced from that embodiment.[10] In this embodiment, "PL" or pilot signal 905, a "ramp up" signal 910 and a "ramp down" signal 911 are selectively input into the header channel through switch 904-0.[11] When the header channel is transmitting, no data is transmitted through the other channels. Switches 904-1 through 904-n are open.[12] When the header channel is not transmitting, switch 904-0 is open and switches 904-1 through 904-n are closed.[13]

As seen in Figure 13, the switches 904-0 through 904-n create a transmission sequence of: ramping up signal 1002 on header channel, pilot signal 1001 on header channel, data transmission through data channels, pilot signal 1001 on header channel, ramping down signal 1003 on header channel, a pause or "guard time" 1004 with no data transmitted, and then repeating the cycle. The '558 patent does not disclose how the opening and closing of the switches is coordinated.

The Patent and Trademark Office did not consider the '558 patent before issuing the '793 patent.

## II.    LEGAL STANDARDS

### A.  Motion to Strike

The Northern District of California's Local Patent Rules require that parties lay out their infringement and validity contentions early enough to give opponents a fair shot at rebuttal.  The rule "exists to further the goal of full, timely discovery and provide all parties with adequate notice

---

[10] *Id.* at col.3 ll.48-53.

[11] *Id.* at col.8 ll.53-60; col.9 ll.12.

[12] *Id.* at col.9 ll.9-12.

[13] *Id.* at col.9 ll.9-12; col.4 l.49-col.5 l.4.

5

Case No. 5:12-cv-04882-PSG
ORDER DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND
MOTION TO STRIKE

1  of and information with which to litigate their cases." [14]  The rules replace the "series of

2  interrogatories that [parties] would likely have propounded" without them. [15]  They are "designed to

3  require parties to crystalize theories of the case early in the litigation and to adhere to those theories

4  once they have been disclosed." [16]  They are also designed to "provide structure to discovery and

5  enable the parties to move efficiently toward claim construction and the eventual resolution of their

6  dispute." [17]

7          Expert reports may not introduce theories not set forth in contentions. [18]  "The scope of

8  contentions and expert reports are not, however, coextensive." [19]  Contentions need not disclose

9  specific evidence, [20] whereas expert reports must include a complete statement of the expert's

10  opinions, the basis and reasons for them, and any data or other information considered when

11  forming them. [21]  When a motion to strike untimely infringement contentions, the question thus

12  becomes has the expert has permissibly specified the application of a disclosed theory, or has the

13  expert impermissibly substituted a new theory altogether?

[14] *XYS Corp v. Advanced Power Tech*, Case No. 02-3942, 2004 WL 1368860, at *3 (N.D. Cal. June 16, 2004).

[15] *Network Coaching Tech L.L.C., v. Novell, Inc.*, Case No. 01-2079, 2002 WL 3216128, at *4 (N.D. Cal. Aug.. 13,  2002).

[16] *Nova Measuring Inst., Ltd. V. Nanometrics, Inc.*, 417 F.Supp.2d 1121, 1123 (N.D. Cal. Mar. 6, 2006).

[17] *Creagri , Inc. v. Pinnacle, Inc., L.L.C.,*  Case No. 11-6635, 2012 WL 5389975, at *2 (N.D. Cal. Nov. 2, 2012).

[18] *See Fenner Investments, Ltd., v. Hewlett-Packard Co.*, Case No. 08-0273, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010).

[19] *See id.*

[20] *See Creagri,* 2012 WL 5389775, at *2.

[21] *See* Fed. R. Civ. P. 26(a)(2)(B).

6

Case No. 5:12-cv-04882-PSG
ORDER DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND
MOTION TO STRIKE

### B.  Summary Judgment

Summary judgment is appropriate only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[22]  There are two distinct steps to a motion for summary judgment.  The moving party bears the initial burden of production by identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a triable issue of material fact.[23]  Where the moving party has the burden of proof at trial, he must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."[24]  If the moving party does not bear the burden of proof at trial, however, he may satisfy his burden of proof either by proffering "affirmative evidence negating an element of the non-moving party's claim," or by showing the non-moving party has insufficient evidence to establish an "essential element of the non-moving party's claim."[25]  If the moving party meets its initial burden, the burden of production then shifts to the non-moving party, who must then provide specific facts showing a genuine issue of material fact for trial.[26]  A material fact is one that might affect the outcome of the suit under the governing law.[27]  A dispute is "genuine" if the evidence is such that reasonable minds could differ and find for either party.[28]

---

[22] Fed. R. Civ. P. 56(a).

[23] *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[24] *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007)

[25] *Celotex*, 477 U.S. at 331.

[26] *See id.* at 330; *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 630, 630 (9th Cir. 1987).

[27] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 , 248 (1986).

[28] *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir. 1987).

Case No. 5:12-cv-04882-PSG
ORDER DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND
MOTION TO STRIKE

1

2

3

At this stage, the court does not weigh conflicting evidence or make credibility determinations.[29]  In reviewing the record, the court must construe the evidence and the inferences to be drawn from the underlying evidence in the light most favorable to the non-moving party.[30]

### III.    DISCUSSION

4

5

6

### A.  A Genuine Dispute Exists As To The Validity Of The '793 patent

7

8

9

10

11

12

13

14

15

16

Because the validity of the '793 patent is a prerequisite to the other issues before the court, the court will consider Apple's motion for summary judgment of invalidity first. The court confronts four questions in resolving this motion. First, is the '558 patent prior art? Second, if the '558 patent is prior art, does it disclose (1) spread-spectrum means or the plurality of product devices, (2) means for generating chip-sequence signals or a chip-sequence generator and (3) a processor, all as claimed? Third, if the processor is not disclosed, does the '558 patent inherently disclose the claimed processor? Fourth, if the processor is not inherently disclosed, would it have been obvious to one of ordinary skill in the art at the time the invention was made to modify the '558 patent to include the claimed processor?[31]

17

18

19

20

21

22

As explained below, a reasonable jury could only find that the '558 patent is prior art and that all limitations of the claims are disclosed except for the processor. That same reasonable jury also could find the '558 patent does not inherently disclose the processor, and that one of ordinary skill in the art would not have been motivated to combine the '558 patent with a processor to synchronize the header and data channels.

23

24

25

---

[29] *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630.

[30] *See Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

26

27

[31] *See* Docket No. 337 at 11.

28

Case No. 5:12-cv-04882-PSG
ORDER DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND
MOTION TO STRIKE

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1

### 1. The '558 patent is Prior Art Because GBT Does Not Have Admissible Evidence of Diligent Reduction to Practice

The predicate question underlying Apple's invalidity challenge based on the '558 patent is whether the '558 patent is even prior art. The '558 patent was filed approximately six weeks before the '793 patent.[32] GBT is nevertheless entitled to a date of invention before the filing date of the '793 patent if it can show (1) a prior conception date and (2) diligent reduction to practice from a date just before to the other party's conception to its reduction to practice.[33]

The burden to prove a date of invention before the '793 patent's filing date in on GBT.[34] GBT must therefore show conception prior to December 30, 1997 and diligent reduction to practice from December 29, 2007 to February 6, 1998. "Priority of invention and its constituent issues of conception and reduction to practice are questions of law predicated on subsidiary factual findings."[35] GBT's evidence of conception and reduction to practice must be "independently corroborated" beyond the inventor's own statements and documents, and must be "evidence that would be available to a jury" to support its factual positions.[36] When evaluating corroboration,

---

[32] The '558 patent was filed December 30, 1997; the '793 patent was filed February 6, 1998.

[33] *See Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577-1578 (Fed. Cir. 1996).

[34] *See id.*; *Griffith v. Kanamaru*, 816 F.2d 624, 625-26 (Fed. Cir. 1987); *Illumina Inc. v. Complete Genomics Inc.*, Case No. C-10-05542-EDL, 2013 WL 1282977, at *7 (N.D. Cal. Mar. 26, 2013) ("A court may also grant summary judgment where a patentee seeking to antedate a prior art reference fails to present adequate evidence of reasonable diligence during the period from a date prior to the other party's conception until the date of reduction to practice.").

[35] *Singh v. Brake*, 317 F.3d 1334, 1340 (Fed. Cir. 2003); *see also Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993). Reduction to practice may be actual—as in construction of an embodiment of the invention—or constructive—filing a patent application that complies with 35 U.S.C. § 112(1). *See* Manual of Patent Examining Procedure § 2138.05 (9th Ed. Mar. 2014).

[36] *See Mahurkar*, 79 F.3d at 1577; Fed. R. Civ. Pro. 56(c); *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006) ("To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury in some form.") (citation and quotation omitted).

9

Case No. 5:12-cv-04882-PSG
ORDER DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND
MOTION TO STRIKE

United States District Court
For the Northern District of California

courts apply a "rule of reason" that examines "all pertinent evidence so that a sound determination of the credibility of the inventor's story may be reached."[37]

So what has GBT come forward with to show conception and diligent reduction to practice?

- Testimony of co-inventor Garodnick. Garodnick testified that he came up to the '793 invention in August 1997 and it took about "half a year to get the patent filed."[38]

- Garodnick's "Invention Disclosure" document that he created and saved on his personal computer. The electronic creation date of the document was August 1, 2007. The parties agree that this document does not fully disclose the invention involving the "processor" limitation, but likely led to the '793 patent.[39]

- A declaration and testimony of co-inventor Schilling. Schilling testified that he worked with Garodnick and the patent prosecutor for "two or three months" before filing. Schilling did not keep any files on the invention or the progress of the application.[40]

- A declaration from Dr. David Newman, the patent prosecutor for Garodnick and Schilling. The Newman declaration explains that beginning in December 1997 he exchanged documents about the invention, including drawings, and spoke on the telephone. While it usually took him "one to two weeks" from the time of a disclosure to create a finished patent application, he believes he began working on the application for the '793 patent in December 1997. All of his records of the '793 patent and application were destroyed in a tornado in April 2002.[41]

The parties have stipulated that Newman will not be called at trial, so his declaration is out.[42] Unfortunately GBT does not present any other non-inventor evidence besides Garodnick's unwitnessed Invention Disclosure. Even if this document were sufficiently independent of the

---

[37] *Coleman v. Dines*, 754 F.2d 353, 360 (Fed. Cir. 1985).

[38] Docket No. 337-7.

[39] *See* Docket No. 337-9; *but see* Docket No. 337 at 7.

[40] *See* Docket Nos. 337-7 (Schilling Depo) and 337-12 (Schilling Decl.).

[41] Docket No. 337-11.

[42] *See Celotex*, 477 U.S. at 327 (evidence submitted at summary judgment stage must be capable of "reduc[tion] to admissible evidence."); *see also Robinson v. Hartzell Propeller Inc.*, 326 F. Supp. 2d 631, 634 (E.D. Pa. 2004) ("[H]earsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony . . . ." (quotation and citation omitted)).

Case No. 5:12-cv-04882-PSG
ORDER DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND
MOTION TO STRIKE

United States District Court
For the Northern District of California

1   inventors, it is only probative of an early date of conception; it says nothing of their diligence, and

2   the former is not a substitute for the latter.

3          On this scant record, no reasonable jury could find that GBT has corroborated its inventors'

4   testimony on either corroboration or reasonable diligence. It may be true that '[t]here is no

5   particular formula that an inventor must follow in providing corroboration of his testimony of

6   conception,'[43] and that circumstantial evidence may do.[44]  But some type of non-inventor,

7   admissible evidence is nonetheless required. And so, even if the jury credits GBT with a

8   conception date of August 1997, which Apple disputes,[45] in the absence of corroboration there is

9   no basis for a reasonable jury to conclude that Garodink and Schilling acted with sufficient diligent

10  to establish an earlier date of invention.[46]  Accordingly, the court must conclude that the '558 patent

11  is prior art and turns next to whether the '558 patent discloses every limitation of the claims at

12  issue or renders them obvious under § 103.

13         **2.  The '558 patent Discloses All Limitations of the Claims Other Than A**
               **Processor**

14

15         To show anticipation under 35 U.S.C. § 102, the moving party must "identify each claim

16  element, state the witnesses' interpretation of the claim element, and explain in detail how each

---

[43] *Singh*, 317 F.3d at 1341.

[44] *See Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1351 (Fed. Cir. 2001).

[45] Conception requires that "an inventor must have formed in his or her mind 'a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" *Mahurkar*, 79 F.3d at 1577 (citing *Burroughs Wollcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994)). Apple maintains that the August 1997 document did not include all of the features claimed in the '793 patent. *See* Docket No. 306 at 11.

[46] *See Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1312-13 (Fed. Cir. 2011) (affirming grant of summary judgment for failing to present adequate evidence of reasonable diligence during critical period); *Monsanto Co. v. Mycogen Plant Sci., Inc*., 261 F.3d 1356, 1363 (Fed.Cir.2001) (affirming grant of JMOL on same grounds).

11

1   claim element is disclosed in the prior art reference."[47] A reference can also anticipate "if that

2   missing characteristic is necessarily present, or inherent, in the single anticipating reference."[48]

3          GBT does not dispute that the '558 patent discloses a multichannel spread spectrum

4   transmitter, a header device for concatenating header and data to generate a header frame, or most

5   of the other limitations of the '793 claims at issue. In addition to the processor limitation, addressed

6   separately below, what GBT does dispute is whether the '558 patent discloses (1) spread-spectrum

7   means or the plurality of product devices and (2) means for generating chip-sequence signals or a

8   chip-sequence generator.

9          **a.   Spread-Spectrum Means and Plurality of Product Devices**

10          Claim 5 requires "spread-spectrum means." "Spread spectrum means" was construed as a

11   means-plus-function claim under 35 U.S.C. § 112(f), with a function of "spread spectrum

12   processing the plurality of data sequence signals by a plurality of chip sequence signals

13   respectively" and structure of "product devices and equivalents thereof."[49] Claim 7 requires the

14   similar "plurality of product devices." The parties stipulated to the construction of "product device"

15   as "a device that performs a multiplication operation."[50]

16          The embodiment of the '558 patent shown in Figures 12 and 13 includes "spreading

17   circuits" 903-3 through 903-N. The spreading circuits are the same as product devices in that they

18   both perform a multiplication operation. Critically, GBT does not dispute this, but instead argues

19   against disclosure of the means because the '558 patent describes header information in the data

---

[47] *See Schumer v. Lab. Computer Systems, Inc.*, 308 F.3d 1304, 1315–16 (Fed.Cir.2002).

[48] *Schering Corp. v. Geneva Pharm.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003)

[49] Docket No. 282 at 2.

[50] *Id.*

12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

channels.[51] But even if this were correct, it is not relevant. No reasonable jury could ignore Figure 13. Figure 13 clearly shows that pilot, ramp up, and ramp down signals—all header information— are only transmitted on the "D Channel" or header channel. The remaining "B Channels" only transmit data.[52] Moreover, GBT does not address the explicit disclosure of the spreading circuit as multiplying the data sequence signals by the chip sequence signals in Figure 12, something that same reasonable jury could not discount or ignore.[53] In short, the '558 patent discloses the spread spectrum means or plurality of product devices of the '793 patent claims.

     **b.   Means for Generating Chip-Sequence Signals and Chip-Sequence Generator**

     Claim 6 requires "means for generating chip-sequence signals" and claim 7 requires a "chip-sequence generator." The parties stipulated to a construction of "means for generating chip-sequence signals" and did not request a construction of "chip-sequence generator."[54]

     Apple argues that the '558 patent necessarily discloses a chip-sequence generator "for providing the various different chip sequences, 0, 1, … N, that the '558 patent discloses, such as shown in '558 FIG. 12."[55] Apple's expert, Dr. Acampora, explains that "a chip-sequence generator such as identified in the '793 patent was a basic component known in the prior art for performing the function of generating chip-sequence signals" and "persons of ordinary skill in the art would understand that the '558 patent necessarily discloses a means for generating."[56]

---

[51] *See* Docket No. 337 at 28.

[52] *See also* Docket No. 306-3 at Fig. 5; col.4 ll.40-48 (explaining that "information data such as a sound information or the like" is transmitted during the "information data transmission period 202" in contrast to the pilot signal and "pilot signal transmission period 203.").

[53] *See* Docket No. 306-3.

[54] *See* Docket No. 282 at 2. "Means for generating the plurality of chip sequence signals" is construed under 35 U.S.C. § 112(f), with a function of "generating the plurality of chip-sequence signals" and a structure of "a chip sequence generator and equivalents thereof."

[55] Docket No. 306 at 22 (citing Docket No. 306-11 at ¶¶ 80, 283, 298).

[56] Docket No. 306-11 at ¶¶ 80, 283.

13

1    GBT's response is that the chip-sequence signals in the '558 patent may be stored in

2    memory or pre-wired, and therefore are not "generated."[57] GBT is essentially asking for a narrower

3    claim construction of "chip sequence generator" to exclude pre-wired and memory generators. But

4    beyond its expert Dr. Vojcic's conclusory statements saying it is so, GBT does not cite any

5    intrinsic or other extrinsic evidence that a chip-sequence signal stored in memory or prewired

6    would not be considered generated by "chip sequence generator" to one of ordinary skill in the art.

7        On this record, a reasonable jury could only find that a "chip sequence generator" is

8    necessarily disclosed in the '558 patent. First, Figure 12 shows multiple spread-spectrum channels

9    with spreading codes 0, 1, … N as is typical in a CDMA system. Second, Vojcic admitted that a

10   person of ordinary skill in the art would understand that timing data in the '558 patent header

11   channel would be used to synchronize the data channels.[58] Third, even if the '558 patent teaches

12   the use of a pre-wired circuit to synchronize the channels, nothing in the '793 patent distinguishes

13   pre-wired circuitry from the claimed generator; the patent merely shows a plain rectangular box

14   styled "generator." Because all record evidence shows that chip-sequence generators were

15   well-known in the art, there is simply no genuine issue of material fact that the '558 patent

16   necessarily discloses the "chip-sequence generator" and "means for generating the plurality of chip

17   sequence signals" limitations.

18       ### 3.  A Genuine Dispute Exists Whether The '558 patent Inherently Discloses A
               Processor

19       Claims 5 and 7 of the '793 patent require "a processor, coupled to the header device and to

20   the plurality of data channels, for synchronizing the plurality of data channels." Claim 6 of the '793

21   patent requires that the spread-spectrum data channels be "synchronized, responsive to timing and

---

[57] Docket No. 337 at 23.

[58] Docket No. 306-10 at ¶ 76.

Case No. 5:12-cv-04882-PSG
ORDER DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND
MOTION TO STRIKE

control signals generated by the processor, to the spread-spectrum-header channel." The court

construed "synchronizing" as "timing the two or more data channels using timing data from the

header and timing and control signals from the processor."[59] The parties did not request

construction of the term "processor."[60]

Apple essentially admits that the '558 patent does not expressly disclose a processor.[61]

Apple and Acampora instead point out that the '558 patent does disclose that the header channel

and data channels are controlled in a synchronized fashion in response to pilot signals. As

illustrated in Figures 12 and 13,

> the ramp down signal 911 in Fig. 12, that signifies the end of pilot signal burst
> could trigger automatically closing of the switches 904-1 to 904-N, and the start
> of ramp up signal 910 could open the switches. A person of ordinary skill in the
> art would understand the control of the switches in this manner based on the
> description provided in the '558 patent.[62]

Thus, the '558 patent does disclose "synchronizing" as construed, and also discloses how switches

coupled to the header channel and to the data channels perform the synchronization. According to

Apple, a processor must control the switches, and Acampora suggests that the processor is likely

present in the box in the '558 patent figures labeled "separation circuit."[63]

But here, in contrast to the "chip-sequence generator" limitation, GBT presents conflicting

evidence that one of ordinary skill in the art would not understand a "separation circuit" to include

a processor.[64] Vojcic explains that one of ordinary skill would understand that a separation circuit

---

[59] Docket No. 282 at 2.

[60] *See* Docket No. 268 (Claim Construction Statement).

[61] *See* Docket No. 306-11 ¶ 265.

[62] Docket No. 306-10 at ¶ 76; *see also* Docket No. 306-11 at ¶¶ 133, 175-76, 265-66; Docket No. 336 at 16 (arguing that a pilot signal provides synchronization of channels).

[63] Docket No. 306-11 at ¶ 266.

[64] Docket No. 306-10 at ¶ 76.

15

United States District Court
For the Northern District of California

1   is a stand-alone circuit used to split a data stream into multiple parallel streams, and finds support

2   in the '558 patent for this interpretation.[65] He goes on to conclude that a synchornizing processor

3   would not necessarily be found within a separation circuit, because the switches could be

4   controlled in another fashion such as pre-wiring or a common clock signal, which would not

5   require a processor.[66] Because GBT presents evidence suggesting that the '558 patent does not

6   inherently disclose a processor, a reasonable juror could find that the '558 patent does not

7   anticipate the '793 patent.[67]

8
9   **4.   A Triable Issue of Fact Exists as to Whether it Would Have Been Obvious to One of Ordinary Skill to Modify The '558 patent to Include A Processor**

10          The final issue to resolve is whether it would have been obvious to use a processor to

11   control the switches in the '558 patent. A patent is obvious if "the differences between the subject

12   matter sought to be patented and the prior art are such that the subject matter as a whole would

13   have been obvious at the time the invention was made to a person having ordinary skill in the art to

14   which said subject matter pertains."[68] What a particular reference discloses is a question of fact,[69]

15   as is the question of whether there was a reason to combine certain references.[70] Under the four

16   part test for obviousness detailed in *Graham v. John Deere*,[71] the court must consider (1) the scope

17   and content of the prior art; (2) the difference between the prior art and the claimed invention; (3)

18
19

20   [65] *See id.*

21   [66] Docket No. 337 at 27.

22   [67] *See Schering Corp.*, 339 F.3d at 1377.

23   [68] 35 U.S.C. § 103(a). *See also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007).

24   [69] *See Para–Ordnance Manufacturing, Inc. v. SGS Importers International, Inc.*, 73 F.3d 1085, 1088 (Fed. Cir. 1995).

25
26   [70] *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1303 (Fed. Cir. 2010).

27   [71] *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966).

28

Case No. 5:12-cv-04882-PSG
ORDER DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND
MOTION TO STRIKE

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the level of ordinary skill in the art; and (4) any objective evidence of nonobviousness. The party asserting invalidity bears the burden of proving "by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so."[72]   The district court reviews any material factual findings by the patent examiner de novo.[73]

The scope and content of the prior art is set forth above. The parties essentially agree on the level of ordinary skill in the art,[74] and GBT did not submit any evidence on objective indicia of nonobviousness. The key difference between the claims and the prior art is the use of a processor to control the switches of the '558 patent to change from transmitting pilot signals through the header channel to transmitting data signals through the data channels.

On this record, the court cannot yet say that it would have been obvious to one of ordinary skill in the art to use a processor to control the switches of the '558 patent. To be sure, there is no genuine dispute that processors were well-known at the time of the '793 patent, and the Federal Circuit has affirmed that applying well-known electronics to prior art can be "common place,"[75] "nothing new,"[76] and "familiar."[77] But this finding still requires evidence, and on summary

---

[72] *Procter & Gamble Co. v. Teva Pharmaceuticals USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009) (quoting *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007)).

[73] *See Kappos v. Hyatt*, -- U.S. --, 132 S.Ct. 1690, 1696 (2012) (citing 5 U.S.C. § 706).

[74] *See* Docket No. 306 at 9 n.1 (Apple's expert proposed "at least a master's degree in electrical engineering with 3-4 years of practical experience in the wireless communications, or the equivalent thereof" and GBT's expert proposed "a Bachelor's Degree in Electrical Engineering, Telecommunications or equivalent field of study and 4-5 years' experience in the field of wireless telephone communication, or a Master's Degree in Electrical Engineering, Telecommunications or equivalent field of study and 1-2 years' experience in the field of wireless telephone communication.").

[75] *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161 (Fed. Cir. 2007).

[76] *W. Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1371 (Fed. Cir. 2010).

17

Case No. 5:12-cv-04882-PSG
ORDER DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND
MOTION TO STRIKE

judgment, undisputed evidence, that there was both a reason to make the combination and that the combination, and not merely the component, was within the skill of the ordinary artisan.[78]  Here, while Acampora offers the bald conclusion that the combination was obvious, he offers no analysis or other evidence regarding the ability or inclination to combine.  In any event, Vojcic offers testimony to the contrary, highlighting the additional cost and complexity of the combination.[79]  A jury is required to sort out  this factual dispute before the court can say as a matter of law whether the '793 patent is obvious.  Summary judgment of non-obviousness is not warranted.

**B.  Golden Bridge's Expert Reports Neither Set Forth Nor Rely On A New, Substantially Different Infringement Theory**

As both parties agree that a large piece of Apple's motion for summary judgment of noninfringment turns on the outcome of the court's decision on the motion to strike GBT's "untimely new infringement theories," it will take up the motion to strike next.  Here, the court is asked to decide two issues: (1) "[w]hether the infringement theory raised in GBT's infringement expert reports is substantially different from the theory disclosed in GBT's infringement contentions" and (2) "[w]hether GBT has shown good cause to amend its infringement contentions to raise the new theory set forth in its expert reports."[80]  Because the answer to the first question is "no," the court need not reach the second.

---

[77]*Asyst Technologies, Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1315 (Fed. Cir. 2008).

[78] *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1303 (Fed. Cir. 2010); *W. Union Co.* 626 F.3d at 1371; *Asyst Technologies* 544 F.3d at 1315 (Fed. Cir. 2008).

[79] *See* Docket No. 306-10 at ¶ 77.

[80] Docket No. 296 at 3.

Case No. 5:12-cv-04882-PSG
ORDER DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

Apple's motion to strike complains that Vojcic relies on a scenario in which the DPCCH contains both "header" and "data" information.[81]   It argues that this is fundamentally inconsistent with its GBT's infringement contentions, which addressed only a device in which the DPCCH (containing exclusively "header" information) was concatenated with the DPDCH (containing exclusively "data" information).[82]   In support of this argument, Apple cites to its own characterizations of GBT's contentions in previous filings and effectively argues that because GBT did not contest these characterizations, they are as binding as the actual language of the contentions themselves.[83]

Yet the plain language of the contentions belies Apple's characterization.   The portion of the contentions cited by Apple in support of its motion to strike reads as follows:

> The DPCCH contains header information *including* pilot bits, TPC commands, feedback information, and an optional transport format combination indicator. The E-DPDCH contains *only* data information. The E-DPCCH contains control information.[84]

Note the different sentence constructions for the descriptions of DPCCH and E-DPDCH: the DPCCH is described as "contain[ing] header information *including*" pilot bits, commands, etc., whereas the DPDCH is described as "contain[ing] *only* data information."[85]   The juxtaposition of these two word choices demonstrates that the drafters of these contentions were perfectly capable of limiting the type of information contained in a particular channel if such a limitation was warranted.   Yet the contentions merely indicate that the DPCCH contains header information including the types listed; they do not in any way indicate that the list provided is exhaustive.

---

[81] *See id.* at 8.

[82] *See id.* at 13-14.

[83] *See id.* at 5-6.

[84] *Id.* at 5 (citing Docket No. 296-4 at 10, 26) (emphasis added).

[85] *Id.*

Case No. 5:12-cv-04882-PSG
ORDER DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Contrast the description of the E-DPDCH, which clearly indicates that it contains exclusively ("only") data information.  As Apple cites no authority in support of its position that GBT could somehow be bound by Apple's after-arising characterizations of its contentions, this language, the only portion of GBT's actual infringement contentions cited in Apple's motion, is dispositive.  Apple's motion to strike is denied.

### C.  Summary Judgment of Noninfringement Is Not Warranted

Apple moves for summary judgment of noninfringement on three grounds.  First, it argues that summary judgment is warranted because the accused products do not have the claimed header frame.  Second, it contends that the accused products do not synchronize using timing data from the header.  Finally, it claims that the accused products do not create a "spread spectrum header channel" because the OVSF code by which the DPCCH signal is multiplied does not change or increase the channel in any way.

Apple's first theory fails because it is predicated on the concept of a two-channel (DPCCH/DPDCH) theory of infringement, and as discussed above, GBT has consistently allowed for a single-channel (DPCCH only) theory of infringement.  As GBT correctly pointed out at oral argument, summary judgment of noninfringement cannot be awarded for failure to prove a two channel theory when a single channel theory is alleged.

Apple's second and most hotly contested theory fails because there is a genuine dispute of material fact between the expert witnesses.  Apple insists that "GBT's experts do not even opine, let alone produce evidence, that the Accused Products contain a processor . . . for timing data channels *using timing data from the header*."[86]  Yet Dr. Huan Liu's report indicates that in his opinion, the accused products include a processor module provides timing data to the header channel and other data channels, "*where the timing for the other data channels is keyed from, or*

---

[86] Docket No. 303-4 at 12 (emphasis in original).

Case No. 5:12-cv-04882-PSG
ORDER DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND
MOTION TO STRIKE

United States District Court
For the Northern District of California

*determined by, the timing of the header channel.*"[87] This stands in stark contrast to the opinion of Acampora that the data channels "are not timed or synchronized using any timing data from the [header channel]."[88]  In the face of such a clear cut difference of opinion on a fact at issue, a jury must decide.

Finally, Apple's third theory fails because it urges the court to incorporate a claim construction from other courts, rather than the one adopted by this court.  In applying the term "spread-spectrum header channel," Apple urges the court to adopt the ordinary meaning of "spread spectrum," and therefore grant summary judgment because there is no dispute that in the accused products, the bandwidth of the DPCCH does not increase.[89]  However, this court construed the term "spread-spectrum header channel" as a complete phrase, and nothing in that construction requires that the final bandwidth of the channel produced be substantively different from the form it was in prior to processing.  It simply requires that a header frame be processed with a first chip-sequence signal.[90]  That it undergo that process is critical, but the bandwidth of the output header itself is irrelevant under this construction, so long as the header channel is part of a channel system that is spread as a whole.  Because each of Apple's theories either fails as a matter of law or is subject to a genuine dispute of material fact, summary judgment of noninfringement is not warranted.

**D.  Summary Judgment of No Pre-Suit Damages Is Not Warranted**

---

[87] Docket No. 336-4 at 19 (citing Docket No. 335-5 at ¶ 40) (emphasis added).

[88] *See* Docket No. 303-4 at 14.

[89] *See* Docket No 375 at 90:9-15.

[90] *See* Docket No. 282 at 2.

21

1     Apple's final summary judgment motion returns to this court the issue of who bears the

2 initial burden of production triggering the marking requirement under the Patent Act.[91]   Put

3 another way, must the patentee first identify marketed products triggering 35 U.S.C. § 287 or does

4 the accused infringer bear an affirmative obligation to show that all products marketed by its

5 licensees do not trigger the marking statute?  As before, the court sees no reason to depart from the

6 rationale first sketched by Judge Alsup in *Google v. Oracle*[92] and later expounded upon by the

7 undersigned.[93]   Summary judgment is not warranted.

8     The parties dispute who bears the burden of satisfying the marking requirement where it is

9

10 disputed whether a licensee marketed a product within the United States that practices the asserted

11 patent.  In previously addressing this issue, this court noted it is without clear guidance from the

12 Federal Circuit on this issue and the case law is split.[94]   This court then observed that Judge Alsup

13 had taken up the issue and found the accused infringer bore a burden to trigger the requirements of

14 the marking statutes.[95]   This court found that the right incentive structure is set by requiring the

15

16 [91] *See* 35 U.S.C. § 287.

17 [92] *See Oracle Am., Inc. v. Google Inc.*, Case No. 3:10-cv-03561-WHA, 2011 WL 5576228,

18 (N.D. Cal. Nov. 15, 2011).

19 [93] *See Sealant Sys. Int'l, Inc. v. TEK Global S.R.L.*, Case No. 5:11-cv-00774-PSG,
2014 WL 1008183, at *30 (N.D. Cal. Mar. 7, 2014).

20 [94] *See TEK Global S.R.L.*, 2014 WL 1008183, at *30.

21 [95] *See id.*

22     In *Oracle v. Google*, Google raised a defense based on the patent-marking statute.
Judge Alsup found that "in order to limit patent-infringement damages to infringement that
23 post-dated actual notice, *Google must show* that Oracle failed to mark patented articles
offered for sale, sold, or imported into the United States before" the date it was put on
24 notice.  *See Oracle*, 2011 WL 5576228, at *2 (emphasis added) (citing *Texas Digital Sys.,
Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1212-20 (Fed. Cir. 2002) (explaining that the
25 actual-notice requirement of Section 287 applies only after it is triggered by a patentee's
opportunity and failure to mark patented articles in commerce)).  The court held that
26 Google "failed to produce evidence establishing acts by Oracle that would trigger the
damages limitation in the patent-marking statute" and therefore Google "did not show that
27 the statute" applied.  *Id.* at 3.  The burden of production thus did not shift to Oracle and the
court held that summary judgment was not warranted on the issue.

28

United States District Court
For the Northern District of California

party seeking limited damages to identify unmarked products believed to practice the accused

claims.  This remains the "better view" because, absent guidance, the universe of unmarked,

marketed goods with the potential to trigger Section 287 "would be unbounded."[96]

    Although Apple met its initial burden – it identified particular phones allegedly triggering

Section 287[97] – the disputed record makes summary judgment unwarranted.  The parties dispute

whether those phones practiced the asserted claims prior to the filing of this case.[98]   Much of the

_____

[96] *Id.*

[97] *See* Docket No. 308-1 and exhibits attached to the Mead Declaration.

[98] *Compare* Docket No. 307-4 at 8.

> GBT alleges that the damages period in this case begins with Apple's introduction of its
> first HSUPA-capable smart phone (the iPhone 4) in June 2010. (Mead Decl. Ex. 3 at 2, 7.)
> Nokia introduced HSUPA-capable smart phones in the United States in 2009 and continued
> selling HSUPA-capable products in 2010-2012.2 GBT's damages expert, Karl Schulze,
> testified that Nokia was selling HSUPA-capable products in the U.S. as early as 2009,
> continuing with product releases into 2012. (Mead Decl. Ex. 4, Schulze Tr. 73:25-74:14
> (Schulze's research re Nokia products); 74:15-77:10, 78:12-79:5, 79:14-16, 81:2-12
> (discussing Nokia selling handsets with HSUPA).) GBT's expert also agrees that Nokia's
> smart phones were licensed to practice the '793 patent in this timeframe. (Id. at 84:23-
> 85:1.)

> Samsung was also offering HSUPA-enabled smart phones in the United States prior to
> the May 24, 2011 expiration of its license to the '793 patent.

*with* Docket No. 338-4.

> The evidence supporting Apple's Motion is contained in the Declaration of Lowell D.
> Mead, Dkt. 308-1 ("Mead Decl.") and the exhibits attached to it.  Most declarations open
> with a statement that the declarant has personal knowledge of the facts stated in it.  That
> statement is noticeably absent from the Mead Decl.  Nowhere does Mr. Mead state that he
> has any personal knowledge of the facts in the declaration or the exhibits it attaches.  None
> of the evidence Mr. Mead attempts to present is sufficient for a summary judgment motion,
> and it is proper to deny the Motion on that basis alone.

> Mead Decl. Exhibits 5-8 are documents purporting to provide information about various
> Nokia products.  Apple's Motion cites these exhibits to support Apple's contention that
> Nokia introduced HSUPA-capable smart phones in the United States in 2009 and continued
> selling HSUPA-capable products in 2010-2012." Mot. 3:9-10 and n.2. However, Mr. Mead
> does not purport to have any personal knowledge of these exhibits, does not identify their
> source and provides no foundation or authentication for them. These exhibits and Mead
> Decl. ¶¶ 6-9 introducing them are inadmissible and should be stricken; they are hearsay,

Case No. 5:12-cv-04882-PSG
ORDER DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND
MOTION TO STRIKE

United States District Court
For the Northern District of California

1  parties' disagreement flows from whether or not the '793 patent is essential to the HSUPA

2  standard.  Curiously, while this motion argues summary judgment on marking is warranted because

3  the '793 patent is standards essential, Apple's motion for summary judgment of non-infringement

4  urges the opposite.[99]   Apple's conflicting arguments confirm that summary judgment precluding

5  pre-suit damages is not warranted.

6

7  **IT IS SO ORDERED.**

8

9  Dated: May 14, 2014

10

11  PAUL S. GREWAL
   United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

---

lack foundation and lack authentication.  Even if these documents were not inadmissible,
however, they would be insufficient to establish that Nokia made, sold, offered for sale or
imported in the United States, devices that complied with the HSUPA standard prior to the
filing of this action on May 8, 2012.

[99] *See* Docket No. 303-4 at 2 ("Contrary to GBT's shifting infringement theories, the '793 patent
does not cover HSUPA, and the Accused Products do not infringe any claim of the '793 patent.").

24

Case No. 5:12-cv-04882-PSG
ORDER DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND
MOTION TO STRIKE