**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| GOLDEN BRIDGE TECHNOLOGY, | ) | Case No. 5:12-cv-04882-PSG |
| | ) | |
| Plaintiff, | ) | **[PROPOSED] FINAL JURY** |
| v. | ) | **INSTRUCTIONS** |
| | ) | |
| APPLE INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**IT IS SO ORDERED.**

Dated: June 10, 2014

_Paul S. Grewal_ _____

PAUL S. GREWAL
United States Magistrate Judge

# 1. DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.  Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.  It is important that you attempt to reach a unanimous verdict but, of course, only each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

## 2. COMMUNICATION WITH THE COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the courtroom deputy, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time.  Please understand that I may answer your questions or I may not, based on the rules of evidence and procedure and after consultation with the attorneys.  You may continue your deliberations while waiting for an answer to any question. Remember that you are not to tell anyone - including me -how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

**3. RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

**4.  BURDEN OF PROOF- PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

### 5.  BURDEN OF PROOF- CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proof on any claim or affirmative defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

**United States District Court**
For the Northern District of California

**6. DEPOSITION IN LIEU OF LIVE TESTIMONY**

As I have previously explained, a deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

You should consider deposition testimony, presented to you in court by videotape in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

# 7.  EXPERT OPINION

Some witnesses, because of education or experience, were permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reason given for the opinion, and all the other evidence in the case

8

**8.  DEMONSTRATIVE EVIDENCE**

During the trial, materials have been shown to you to help explain testimony or other evidence in the case.  Other materials have also been shown to you during the trial, but they have not been admitted into evidence.  You will not be able to review them during your deliberations because they are not themselves evidence or proof of any facts.  You may, however, consider the testimony given in connection with those materials.

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

### 9. CONFIDENTIALITY

During this trial, the attorneys have presented confidential information belonging to one of the parties as evidence. You are not to discuss or communicate any confidential evidence presented during this trial to anyone aside from the other jurors during deliberations, either during the trial or after the trial.

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

# 10. INTERPRETATION OF CLAIMS

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.

Each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as- being correct. You should disregard any conflicting interpretation.  My interpretation of the language should not be taken as an indication that I have a view regarding the issue of infringement. The decision regarding infringement is yours to make. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

The parties have agreed to or the court has interpreted the following terms in the claims at issue.  Any terms not construed below should be interpreted according to their plain and ordinary meaning:

1) The term "header" means "a sequence of bits or symbols, which include a pre-defined sequence of bits or symbols (pilot)."

11

2) The term "header frame" means "[a] header followed by data in a frame, which may include multiple headers interspersed with fields of data."

3) The term "data-sequence signal" means "[a] signal that may be derived from data, or an analog signal converted to data, signaling information, or other source of data symbols or bits."

4) The term "a header device" means "[a] device that concatenates a header to a first data-sequence signal on a first channel."

5) The term "concatenating" means "linking together two or more items in a single chain or series."

6) The term "product devices" means "a device that performs a multiplication operation."

7) The term "multichannel-spread-spectrum transmitter" is to be interpreted in accordance with its plain and ordinary meaning.

8) The term "data channel" means "a communication channel able to carry data."

9) The term "spread-spectrum data channel" means "[a] channel, without a header, that is generated by processing data-sequence signal by a respective chip-sequence signal."

10) The term "spread-spectrum header channel" means "[a] channel generated by processing the header frame with a first chip-sequence signal."

11) The terms "chip sequence signal" and "parallel chip sequence signals" are to be interpreted in accordance with its plain and ordinary meaning.

12) The term "synchronizing the plurality of data channels" means "timing the two or more data channels using timing data from the header and timing and control signals from the processor."

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

### 11.  HOW A CLAIM DEFINES WHAT IT COVERS

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a thing (such as a product) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product or process.

 Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

## 12. INFRINGEMENT- BURDEN OF PROOF

I will now instruct you how to decide whether or not Apple has infringed claim 7 of the '793 patent.

In order to prove infringement, GBT must prove that the requirements for infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of claim 7 of the '793 patent have been proved.

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

**13. INFRINGEMENT**

As I have explained, a patent's claims define what is covered by the patent. A product infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Apple has made, used, sold, offered for sale or imported within the United States a product that is covered by a claim of the '793 patent. If it has, it infringes. You, the jury, make this decision.

Whether Apple knew their respective products infringed or even knew of the patent does not matter in determining infringement.

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

## 14. LITERAL INFRINGEMENT

To decide whether Apple's products are covered by claim 7 of the '793 patent, you must compare each product with claim 7 and determine whether every requirement of the claim is included in that product.  If so, Apple's product infringes that claim.  If, however, Apple's product does not have every requirement in the patent claim, Apple's product does not literally infringe that claim.

Claim 7 of the '793 patent uses the term "comprising," and that patent claim is to be understood as an open claim.  An open claim is infringed as long as every requirement in the claim is present in Apple's product   The fact that Apple's product also includes other parts will not avoid infringement, as long as it has every requirement in the patent claim.

United States District Court
For the Northern District of California

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

**15. INVALIDITY-BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether or not Apple has proven that claim 7 of the '793 patent are invalid. Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense.  To prove that any claim of a patent is invalid, Apple must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction that the claim is invalid.

During this case, Apple has submitted prior art that was not considered by the United States Patent and Trademark Office (PTO) during the prosecution of the '793 patent.  Apple contends that such prior art invalidates claim 7 of the '793 patent.  In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the '793 patent.  Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make Apple's burden of showing that it is highly probably that a patent claim is invalid easier to sustain

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

# 16. INVALIDITY-PRIOR ART

Prior art may include items that were publicly known or that have been used or offered for sale, publications, or patents that disclose the claimed invention or elements of the claimed invention. To be prior art, the item or reference must have been made, known, used, published, or patented before the filing date of the patent at issue.

The parties have stipulated that the following references are prior art to the '793 patent:

- The publication "Multimedia Mobile Radio Access Based on Coherent DS-CDMA" by F. Adachi and other authors.  This prior art reference is also known as the "Adachi 1995 publication."

- U.S. Patent No. 5,896,374, "Variable Rate Transmission Method, Transmitter and Receiver Using the Same," toY. Okumura and other mimed inventors.  This prior art reference is also known as the "Okumura '374 patent."

- U.S. Patent No. 5,793,744, "Mul tichannel High-Speed Data Transfer," to M. Kanerva and other named inventors.  This prior art reference is also known as the "Kanerva '744 patent."

- The publication "Frames  Multiple Access for UMTS" by T. Ojanpera and other authors. This prior art reference is also known as the "Ojanpera 1997 publication."

- U.S. Patent No. 6,108,369, "Channelization  Code  Allocation  for  Radio Communication Systems," to F. Ovesjo and E. Dahlman. This prior art reference is also known as the "Ovesjo '369 patent."

- The publication "Wideband Direct-Sequence CDMA Evaluation Document" by the Concept Group Alpha and numbered Tdoc SMG2 270/97.  This prior art reference is also known as the "270/97 publication."

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

The parties dispute whether the following references are prior art, and it will be your duty to decide:

- U.S. Patent No. 6, 175, 558, "CDMA Radio Multiplex Transmitting Device and a CDMA Radio Multiplex Receiving Device" to K. Miya.  This patent is also known as the "Miya '558 patent."

- The publication "Wideband Direct-Sequence CMDA Evaluation Document" by the Concept Group Alpha and numbered Tdoc SMG 905/97.  This publication is also known as the "905/97 publication."

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

# 17. INVALIDITY-ANTICIPATION

In order for someone to be entitled to a patent, the invention must actually be "new" and the inventor must not have lost her or his rights by delaying the filing of an application claiming the invention.  In general, inventions are new when the identical product has not been made, used, or disclosed before.  Anticipation must be determined on a claim-by-claim basis.

Apple contends that claim 7 of the '793 patent is invalid because the claimed invention is anticipated.  Apple must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid.

Here is a list of ways that Apple can show that a patent claim was not new:

(1)   An invention is not new if it was known to or used by others in the United States before the date of the invention.  An invention is known when the information about it was reasonably accessible to the public on that date.

(2)   An invention is not new if it was already patented or described in a printed publication, anywhere in the world before the date of the invention.

(3)   GBT has lost its rights if the claimed invention was already patented or described in a printed publication, anywhere in the world by GBT or anyone else, more than a year before February 6, 1998, which is the effective filing date of the application for the '793 patent.   An invention was patented by another if the other patent describes the same invention claimed by GBT to a person having ordinary skill in the technology.

(4)   An invention is not new if it was described in a published patent application filed by another in the United States or under the PCT system and designated the United States, and was published in English before the invention date.

(5)   An invention is not new if the claimed invention was described in a patent granted

20

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

on an application for patent by another filed in the United States or under the PCT system and designated the United States, and was published in English and the application was filed before February 6, 1998.

For the claim to be invalid because it is not new, Apple must show that all of the requirements of that claim were present in a single previous device or method that was known of, used, or described in a single previous printed publication or patent.  We call these things "anticipating prior art." To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or necessarily implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

## 18. INVALIDITY-OBVIOUSNESS

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Apple may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of wireless telecommunications.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of wireless telecommunications that someone would have had at the time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art.

In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of wireless telecommunications to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known functions; (2) whether the claimed invention provides an obvious solution to a known problem .in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether

22

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

it would have been obvious to try the combinations  of elements, such as when there is a design

need or market pressure to solve a problem  and there  are a finite  number  of identified,

predictable  solutions  and (6) whether the change  resulted  more  from  design  incentives  or

other  market  forces.  To find it  rendered  the invention obvious, you must find that the prior art

provided a reasonable expectation of success.

In determining whether the claimed invention was obvious, consider each claim

separately. Do not use hindsight, i.e., consider only what was known at the time of the invention.

In  making  these  assessments,  you  should  take  into  account  any  objective  evidence

(sometimes called "secondary  considerations")  that may have existed at the time of the

invention and afterwards that may shed light on the obviousness or not of the claimed invention,

such as:

a)  Whether or not the invention was commercially successful as a result of the merits of

the claimed invention (rather than the result of design needs or market-pressure

advertising or similar activities);

b)  Whether or not the invention satisfied a long-felt need;

c)  Whether or not others had tried and failed to make the invention;

d)  Whether or not others invented the invention at-roughly the same time;

e)  Whether or not others copied the invention;

f)  Whether or not there were changes or related technologies  or market needs

contemporaneous with the invention;

g)  Whether or not the invention achieved unexpected results;

h)  Whether or not others in the field praised the invention;

i)  Whether or not persons having ordinary skill in the art of the invention expressed

surprise or disbelief regarding the invention;

23

1

j)   Whether or not others sought or obtained rights to the patent from the patent holder; and

2

k)   Whether or not the inventor proceeded contrary to accepted wisdom in the field.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

1

**19. INVALIDITY- LEVEL OF ORDINARY SKILL**

2

In deciding what the level of ordinary skill in the field of the invention is, you should

3

consider all the evidence introduced at trial, including but not limited to: (1) the levels of education

4

and experience of the inventor and other persons actively working in the field; (2) the types of

5

problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which

6

innovations are made; and (5) the sophistication of the technology.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

## 20.  INVALIDITY- WRITTEN DESCRIPTION

The patent law contains certain requirements for the part of the patent called the specification. Apple contends that claim 7 of the '793 patent is invalid because the specification of the '793 patent does not contain an adequate written description of the invention. To succeed, Apple must show by clear and convincing evidence that the specification fails to meet the law's requirements for a written description of the invention. In the patent application process, the applicant may keep the originally filed claims, or change the claims between the time the patent application is first filed and the time a patent is issued. An applicant may amend the claims or add new claims. These changes may narrow or broaden the scope of the claims. The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed. The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application. The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application

26

## 21. INVALIDITY-NON-ENABLEMENT

The patent law contains certain requirements for the part of the .patent called the specification. Apple contends that claim 7 of the '793 patent is invalid because the specification does not contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention. To succeed, Apple must show by clear and convincing evidence that the '793 patent does not contain a sufficiently full and clear description of the claimed invention. To be sufficiently full and clear, the description must contain enough information to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time the '793 patent application was filed. This is known as the "enablement" requirement. If a patent claim is not enabled, it is invalid.

In order to be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time of '793 filing without having to conduct undue experimentation. However, some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1) the time and cost of any necessary experimentation;

(2) how routine any necessary   experimentation   is in the field of wireless telecommunications;

(3) whether the patent discloses specific working examples of the claimed invention;

(4) the amount of guidance presented in the patent;

(5) the nature and predictability of the field of wireless telecommunications;

(6) the level of ordinary skill in the field of wireless telecommunications; and

(7) the scope of the claimed invention.

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

No one or more of these factors is alone dispositive.  Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the '793 application, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

## 22.  DAMAGES

If you find that Apple infringed claim 7 of the '793 patent and that claim 7 is not invalid, you must then consider what amount of damages to award to GBT. I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue. If you find that Apple infringed any valid claim of the '793 patent, you must then determine the amount of money damages to be awarded to GBT to compensate it for the infringement.

The damages you award must be adequate to compensate GBT for the infringement. They are not meant to punish an infringer.  Your damages award, if you reach this issue, should put GBT in approximately the same financial position that it would have been in had the infringement not occurred.

GBT has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that GBT establishes that it more likely than not suffered. In this case, GBT seeks a reasonable royalty.

A patent holder is not entitled to damages that are remote or speculative. While a patent holder is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  When the amount of damages cannot be ascertained with precision, any doubts regarding the amount must be resolved against the alleged infringer.

I will give more detailed instructions regarding damages shortly.  Note, however, that GBT is entitled to recover no less than a reasonable royalty for each infringing sale.

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

### 23. DAMAGES- REASONABLE ROYALTY

If you determine that any products sold by Apple infringed any valid claims of the '793 patent, then GBT should be awarded a reasonable royalty for all sales associated with each such product infringing a particular patent.

A royalty is a payment made to a patent holder in exchange for the right to make, use or sell the claimed invention. This right is called a "license.'' A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent holder and the infringer taking place at the time when the infringing activity first began. In considering this hypothetical negotiation, you must assume that the patent holder and the infringer would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the patent was valid and infringed. Your role is to determine what the result of that negotiation would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence has a causal nexus to the claimed invention and aids in assessing what royalty would have resulted from a hypothetical negotiation.

It is up to you, based on the evidence, to decide what royalty is appropriate in this case

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

## 24. DAMAGES-REASONABLE ROYALTY: RELEVANT FACTORS

In determining the outcome of the hypothetical negotiation, you should consider all facts known to the parties at the time infringement began. Some of the factors you may consider are:

1) Royalties received by the patent holder for licensing the patent-in-suit, proving or tending to prove an established royalty.

2) Rates the infringer paid for using other patents comparable to the patent-in-suit.

3) The nature of the license, i.e., exclusive or nonexclusive, restricted or unrestricted in terms of territory or to whom products covered by the patent claim may be sold.

4) The patent holder's policy to maintain its patent monopoly by not licensing others or by granting licenses under special conditions designed to preserve its monopoly.

5) The commercial relationship between the patent holder and infringer, such as whether they are competitors in the same territory in the same line of business.

6) The effect of selling the patented invention in promoting sales of other products of the infringer, the existing value of the patented invention to the patent holder as a generator of sales of non-patented items, and the extent of such derivative or convoyed sales.

7) The duration of the patent and the term of the license.

8) The established profitability of products covered by the patent claim, their commercial success, and their current popularity.

9) The advantages and benefits of the patented invention over older modes or devices, if any, that had been used to work on similar problems.

10) The nature of the patented invention, the character of the patent holders' products covered by it, and the benefits to those who have used the invention.

11) The extent to which the infringer has made use of the patented invention and any

31

evidence probative of the value of that use.

12) The portion of the profit or selling price that was customary in the business or in comparable businesses allow for the use of the invention or analogous inventions.

13) The portion of the realizable profits that should be credited to the patented invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14) The opinion and testimony of qualified experts.

15) The amount that a prudent licensor (such as the patent holder) and a prudent licensee (such as the infringer) would have agreed upon at the time infringement began if both had been reasonably and voluntarily trying to reach an agreement.

No one factor is dispositive, and you should consider the evidence that has been presented to you in this case on each one of the factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place a time when infringement began

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 25. DAMAGES- NONINFRINGING ALTERNATIVES

You may also consider the impact of any available noninfringing alternatives to the asserted claim on the royalty negotiated in the hypothetical negotiation.  In doing so, you may consider the value of any differences in benefits and costs between the noninfringing alternatives and the asserted claim.  You may also consider any alternatives that were available to a standard-setting body or to a third-party component supplier.

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS

**26. DAMAGES-RELEVANCE OF PRIOR PATENT LICENSE AGREEMENTS**

In evaluating whether any of the actual licenses that were presented as evidence in this trial are comparable to the hypothetical license of the '793 patent that would have resulted from a hypothetical negotiation between GBT and Apple, you must account for the differences between the past agreements and the hypothetical negotiation in this case. In doing so, you should consider the following factors:

1) Whether that actual license was entered into at about the same time as the hypothetical license

2) Whether the parties to that license were the same as the parties to the hypothetical license;

3) Whether that actual license at issue was a license of the '793 patent;

4) The types of rights conveyed;

5) The availability of noninfringing alternatives;

6) The number of patents involved;

7) The existence of ongoing litigation between the parties;

8) Whether the parties to that actual license assumed that the patent(s) licensed were valid, enforceable and infringed

Case No. 5:12-cv-04882-PSG
[PROPOSED] FINAL JURY INSTRUCTIONS