1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| GOLDEN BRIDGE TECHNOLOGY, INC., | ) | Case No. 5:12-cv-04882-PSG |
| Plaintiff, | ) ) | **ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE FOR NEW TRIAL** |
| v. | ) ) ) | |
| APPLE, INC., | ) ) | **(Re: Docket No. 579)** |
| Defendant. | ) ) ) | |

A jury of nine found for Plaintiff Golden Bridge Technology, Inc. on the validity of GBT's U.S. Patent No. 6,075,793, which claims a multichannel spread spectrum system for processing communications data more efficiently. The jury nevertheless found that Defendant Apple Inc.'s accused products do not infringe. Not satisfied with this split decision, GBT now renews its motion for judgment as a matter of law that Apple infringed its patent, or, in the alternative, for a new trial.[1] After considering the parties' arguments, the court DENIES GBT's motion.

---

[1] *See* Docket No. 579.

1

Case No.: 5:12-cv-04882-PSG
ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
THE ALTERNATIVE FOR NEW TRIAL

United States District Court
For the Northern District of California

**I.**

Fed. R. Civ. P. 50(b) provides that, upon a renewed motion for judgment as a matter of law, the court may: (1) "allow judgment on the verdict, if the jury returned a verdict," (2) "order a new trial" or (3) "direct the entry of judgment as a matter of law." "Where a party moves for JMOL in a case that has been tried to a jury, the district court must determine whether there exists evidence of record upon which a jury might properly have returned a verdict in [the non-movant's] favor when *the correct legal standard is applied.* If there is not, [the movant] was entitled to have the question removed from the jury and decided as a matter of law."[2] "[T]he legal standards that the jury applies, expressly or implicitly, in reaching its verdict are considered by the district court and by the appellate court de novo to determine whether those standards are correct as a matter of law."[3]

In contrast, "the jury's factual findings receive substantial deference on motion for JMOL."[4] To grant a Rule 50(b) motion based upon flaws in the jury's factual findings, the court must determine that "the evidence, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's."[5] In other words, to set aside the verdict, there must be an absence of "substantial evidence"—meaning "relevant evidence that a reasonable mind would accept as adequate to support a conclusion"—to support the jury's verdict.[6]

---

[2] *Markman v. Westview Instruments*, 52 F.3d 967, 975 (Fed. Cir. 1995) (internal citations omitted) (emphasis in original).

[3] *See id.*

[4] *See id.*

[5] *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (citing *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)).

[6] *Id.*

Case No.: 5:12-cv-04882-PSG
ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE FOR NEW TRIAL

1    "Substantial evidence is more than a mere" scintilla;[7] it constitutes "such relevant evidence

2    as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw

3    two inconsistent conclusions from the evidence."[8]  "In reviewing a motion for JMOL, the [c]ourt

4    must view the evidence in the light most favorable to the non-moving party and draw all reasonable

5    inferences in its favor."[9]  "In ruling on such a motion, the trial court may not weigh the evidence or

6    assess the credibility of witnesses in determining whether substantial evidence exists to support the

7    verdict."[10]

8          Fed. R. Civ. P. 59 states that the court "may, on motion, grant a new trial on all or some of

9    the issues."  The "trial court may grant a new trial, even though the verdict is supported by

10   substantial evidence, if 'the verdict is contrary to the clear weight of the evidence or is based upon

11   evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of

12   justice.'"[11]  "A party seeking to set aside a judgment or obtain a new trial based on erroneous jury

13   instructions must establish that (1) it made a proper and timely objection to the jury instructions,

14   (2) it requested alternative instructions that would have remedied the error, (3) the given jury

15   instructions were legally erroneous and (4) the errors had prejudicial effect."[12]

16

17

18   [7] *Chisholm Bris. Farm Equip. Co. v. Int'l Harvester Co.*, 498 F.2d 1137, 1140 (9th Cir. 1974)
     (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

19

20   [8] *Landes Constr. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987) (internal
     citations omitted).

21

22   [9] *Transbay Auto Serv., Inc. v. Chevron U.S.A., Inc.*, Case No. 09-cv-04932-SI, 2013 WL 496098, at
     *2 (N.D. Cal. Feb. 7, 2013) (citing *Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006)).

23   [10] *Id.* (citing *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir. 1984)).

24   [11] *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010)
     (quoting *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999)).

25

26   [12] *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 799 (Fed. Cir. 2010) (internal citation
     omitted).

27                                              3

28   Case No.: 5:12-cv-04882-PSG
     ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
     THE ALTERNATIVE FOR NEW TRIAL

1    GBT is the assignee of the '793 patent, which issued in 2000 to Dr. Donald Schilling and

2    Dr. Joseph Gardonick.  At the heart of the '793 patent is a "multichannel-spread-spectrum system

3    for communicating a plurality of data-sequence signals from a plurality of data channels using

4    parallel chip-sequence signals in which fewer than all of the channels include header

5    information."[13]  Various prior art spread-spectrum systems disclose using each channel to transmit

6    pilot signals and other header information as well as data.[14]  The '793 patent allegedly improved

7    upon the prior art, including Schilling's United States Patent No. 5,166,951, by synchronizing data

8    channels by putting pilot signals and other header information in only one channel, rather than all

9    channels.[15] This was accomplished by utilizing a processor as the "traffic cop" to generate the

10   timing controls required to synchronize the multiple data channels.  Removing the header in all but

11   one channel improves efficiency by allowing the '793 transmitter to transmit more data in the same

12   bandwidth as other transmitters.[16]

21   Figure 3 shows a schematic of the invention:

---

[13] *See* Docket No. 306-2.

[14] *See* Docket No. 461 at 2 (internal citations omitted).

[15] *See id.*; *see also* Docket No. 595-1, Ex. 1 at 411:19-25.

[16] *See* Docket No. 461 at 2; *see also* Docket No. 306-2 at col. 2:3-40.

4

Case No.: 5:12-cv-04882-PSG
ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
THE ALTERNATIVE FOR NEW TRIAL



**FIG. 3**

Claim 7 of the '793 patent requires:

> A multichannel-spread-spectrum transmitter for communicating a plurality of data-sequence signals from a plurality of data channels using parallel chip-sequence signals, comprising:
>
> a header device, coupled to a first data channel of said plurality of data channels, for concatenating a header to a first data-sequence signal to generate a header frame;
>
> a processor, coupled to the header device and to the plurality of data channels, for synchronizing the plurality of data channels....[17]

GBT filed this suit for infringement of the '793 patent in 2012. The suit was originally filed in the Central District of California and named thirty-five parties in addition to Apple as defendants. After the claims against all but Apple were severed and dismissed, the remaining case

---

[17] *See* Docket No. 306-2 at col. 12:14-24.

5

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    against Apple was transferred to this district.[18]  GBT ultimately accused four Apple products of

2    infringing Claim 7: iPhone 4, iPhone 4S, iPhone 5 and iPad 2.  Apple first sold the iPhone 4 in the

3    United States in 2010; the other products were released after that.  Each of the accused Apple

4    products includes integrated circuits or "chips" manufactured by Qualcomm, Inc. and Intel

5    Corporation.

6         The parties requested that the court construe ten claims.[19]  The court held a claim

7    construction hearing[20] and issued a summary construction order the next day.[21]  After the claim

8    construction hearing, Apple moved for summary judgment of invalidity, noninfringement and no

9    pre-suit damages.  The court denied Apple's motions.[22]

10        The case then proceeded to trial.  During the two weeks of trial, the parties' complex

11   arguments regarding infringement ultimately boiled down to a single, key limitation with claim 7:

12   "a processor, coupled to the header device and to the plurality of data channels, for synchronizing

13   the plurality of data channels."[23]  The "synchronizing" term within this limitation was construed by

14   the court to mean "timing the two or more data channels using timing data from the header and

15   timing and control signals from the processor."[24]  As is common in patent cases, the parties

16   presented opposing expert testimony on whether the accused products infringed this portion of

17   claim 7.  GBT submitted expert testimony from Dr. Huan Liu to explain how the chips work and

18

---

19   [18] *See* Docket No. 249.

20   [19] *See* Docket No. 282.

21   [20] *See* Docket No. 281.

22   [21] *See* Docket No. 282. The court later provided a more complete order explaining the court's

23   reasoning. *See* Docket No. 599.

24   [22] *See* Docket No. 461.

25   [23] *See* Docket No. 306-2 at col. 12.21-24.

26   [24] *See* Docket No. 282 at 2.

27

28   Case No.: 5:12-cv-04882-PSG
     ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
     THE ALTERNATIVE FOR NEW TRIAL

1    expert testimony from Dr. Branimir Vojcic to show how these chips infringe the '793 Patent.[25]

2    Vojcic's theory of infringement was that the accused Apple products have a processor that provides

3    timing information to the header and other data channels where the timing information is keyed

4    from the header channel.[26]  Ultimately, the jury returned a verdict that the '793 patent was valid but

5    that Apple had not infringed.[27]

6

7                                              **II.**

8            This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338.  The parties further

9    consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and

10   Fed. R. Civ. P. 72(a).

11                                             **III.**

12           Because Apple has presented substantial evidence that it did not infringe and GBT has not

13   shown that a new trial is justified, neither JMOL in favor of GBT on infringement nor a trial is

14   warranted.  Nor is there any merit to GBT's contention that the court should re-construe the

15   synchronizing limitation or allow the jury to decide claim construction.

16           *First*, Apple presented substantial evidence that it did not infringe Claim 7's "coupling"

17   term.[28]  As noted above, Claim 7 requires "a processor, *coupled to the header device* and to the

18   ───────────────

     [25] *See* Docket No. 585-2 at 738:1-3; *see also* Docket No. 594-4 at 46.

19   [26] Vojcic testified, in response to GBT counsel's question "under the court's construction, the
     synchronizing refers to timing the two or more data channels using timing data from the header and
20   timing and control signals from the processor.  Did you find that this language was met?" that
     "[y]es, I did." *See* Docket No. 584-5 at 876:6-11.  This is because "it's very complicated system
21   but it's essentially controlled by the processor." *See* Docket No. 595-1, Ex. 1 at 1008:15-16.

22   [27] *See* Docket No. 595-1, Ex. 13.

23   [28] The parties dispute the legal standard that the court must apply in determining whether to grant
     JMOL.  Apple contends that substantial evidence supports the jury's noninfringement verdict. *See*
24   Docket No. 584-4 at 9.  GBT claims that the court must review de novo whether Apple
     misrepresented the court's claim construction at trial and that "[a]rguing substantial evidence on
25   the wrong legal standard does not overcome the fact that Apple argued the wrong law to the
     [j]ury." *See* Docket No. 589 at 2.  The court reviews "the legal standards that the jury applies,
26   expressly or implicitly, in reaching its verdict" de novo "to determine whether those standards are
27   correct as a matter of law." *See Markman*, 52 F.3d at 975.  In contrast, "[f]actual findings made by

                                              7
28
     ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
     THE ALTERNATIVE FOR NEW TRIAL

*(left margin)* United States District Court   For the Northern District of California

United States District Court
For the Northern District of California

1   plurality of data channels, for synchronizing the plurality of data channels."[29]  Neither party

2   requested construction of this term, but the patent explains that the processor is "[r]esponsive to the

3   header" and "generates control and timing signals to synchronize the plurality of data channels to

4   the header."[30]  It is by the coupling of the processor to the header device that the processor can

5   synchronize the plurality of data channels.[31]

6          Apple presented substantial evidence at trial that the accused products did not "couple"

7   because the accused header device was not functionally coupled to the accused processor.  GBT

8   contended that the DPCCH register in the baseband chips in the accused devices was the header

9   described in the '793 patent.[32]

10  ███████████████████████████████████████████████

11

---

12  the jury in arriving at its verdict are to be upheld unless the party moving for JMOL shows that
13  (when the correct legal standard is applied) there is not substantial evidence to support a finding in
    favor of the nonmovant." *See id.*  It would be legal error for Apple to misrepresent the court's
14  claim construction at trial.  Thus, the court reviews de novo the issue of whether Apple
    misrepresented the construction of the synchronizing limitation at trial.  Because the court
15  concludes, as discussed below, that the Apple did not misconstrue this limitation, the jury applied
    the correct legal standard to reach its verdict.  Thus, the court considers whether there is substantial
16  evidence to support the jury's finding of infringement when determining whether to set aside the
    jury's verdict. *See id.; see also Star Scientific, Inc. v. RJ Reynolds Tobacco Co.*, 655 F.3d 1364,
17  1378 (Fed. Cir. 2011) ("Infringement is a question of fact reviewed for substantial evidence.")
    (internal citations omitted).
18

19  [29] *See* Docket No. 306-2 at col. 12:21-24.

20  [30] *See id.* at col.4:60-63.

21  [31] *See id.* at col. 6:14-22:

22
        The header device 46 concatenates the header with data using a first data channel of a
23      plurality of data channels.  The header device 46 is necessary for timing of data from
        different data channels.  From timing the data from the header in a single channel, data in
24      all channels are timed.  A plurality of synchronization devices, which may be embodied as
        buffer memories 32-38, receive timing and control signals from the processor 27 to
25      synchronize the plurality of data channels to the header on the first data channel.

26  [32] *See* Docket No. 584-5 at 872:6-874:21.

27                                            8

28  Case No.: 5:12-cv-04882-PSG
    ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
    THE ALTERNATIVE FOR NEW TRIAL

1

2

3                                        Goldberg thus opined that the accused headers and processors in the Qualcomm

4 and Intel chips "operate independently."[35]

5          Apple's expert Anthony Acampora also testified that the header and processors in the

6 accused products were not coupled. Acampora explained:

7

8          Q: In your report...in this case, the opinion that you gave...was that the accused devices do
not send a signal from the header device into the processor, right? Do you remember

9          describing that in your report[?]

10          A: I think I said it...stronger than that. I think I said is there's no coupling between the
accused header device. That was the transmit registers that took the contents from an off

11          chip DSP by separate DSP bus and organized that into what then because the DPCCH. The
transmit register...is not coupled to the offline time control block which I believe is a

12          processor that times all of the channels by virtue of receiving another clock signal...[36]

13

14 Taken together, Goldberg and Acampora's testimony presents "such relevant evidence as

15 reasonable minds might accept as adequate to support a conclusion" that the accused headers were

16 not functionally connected to any accused processors and thus were not "coupled" to each other.[37]

17 Put another way, Apple presented substantial evidence that the accused devices did not practice the

18 coupling limitation of the asserted patent.

19

20

21 [33] See id. at 1176:6-15.

22

23                              see also Docket No. 585-2 at 738:1-5 (Liu testified that he agreed
with Goldberg's analysis about how the accused products operate).

24 [35] See Docket No. 584-5 at 1191:2-20.

25 [36] See Docket No. 585-2 at 1382:6-15.

26 [37] See Landes Constr. Co., Inc., 833 F.2d at 1371.

27                                    9

28 Case No.: 5:12-cv-04882-PSG
ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
THE ALTERNATIVE FOR NEW TRIAL

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

There is simply no merit in GBT's contention that its presentation of evidence that the accused devices meet the coupling limitation renders coupling a "non-issue."[38]  GBT may be right that Vojcic did testify that the accused products practiced this limitation.[39]  In particular, Vojcic testified that he understood that there "are two ways to apply" the court's construction of "using timing data from the header."[40]  Vojcic explained:

> A: I think [using timing data from the header] means one of the two things.  Either physically receiving timing signals from the header at the processor or keying the timing from the header, it shouldn't require these physical signals.
>
> Q. The physical signal to go from the header device into the processor?
>
> A. In the first option.
>
> Q. And in the second option does it matter whether you have a physical signal that goes from the header into the processor?
>
> A. No, it doesn't."[41]

But GBT cannot win JMOL simply by showing that it presented evidence by which the jury could have concluded that the accused products infringed.  Rather, GBT must show that Apple *did not* present substantial evidence that supported the jury's actual finding that the accused products did not practice every limitation of the asserted patent.  Even if from Vojcic's testimony "it is possible to" find that Apple infringed the coupling limitation, Apple offered other evidence that reasonable jurors "might accept as adequate to support a conclusion" that the accused header and processor do not meet this limitation because they operate independently.[42]

---

[38] *See* Docket No. 589 at 5.

[39] *See id.*

[40] *See* Docket No. 585-2 at 1677:8-12.

[41] *See id.* at 1678:3-13.

[42] *Landes Constr. Co., Inc.*, 833 F.2d at 1371.

10

Case No.: 5:12-cv-04882-PSG
ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
THE ALTERNATIVE FOR NEW TRIAL

1    **Second**, Apple did not misrepresent the court's construction of the synchronizing term.

2    Both parties proposed that the court construe the term "synchronizing the plurality of data

3    channels."[43]   GBT proposed a construction of "aligning in time two or more data channels."[44]

4    Apple asked that the court construe this term as "timing the two or more data channels using the

5    header."[45]

6    At the *Markman* hearing, the "parties' positions on this term substantially converged."[46]

7    The parties agreed that "it is proper to say that synchronization is accomplished by using timing

8    data from the header" and involves "timing and control signals from the processor."[47]   Thus, the

9    "only remaining dispute" was whether to construe synchronization as "aligning" (as GBT

10   preferred) or as "timing" (as Apple preferred).[48]   Looking to the specification, the court concluded

11   that "synchronization" of data channels means "timing."[49]   The court then construed this term as

12   "timing the two or more data channels using timing data from the header and timing and control

13   signals from the processor."[50]

14   GBT claims that Apple "argued outside the [c]ourt's claim construction" at trial by

15   focusing on the synchronizing limitation's requirement of a header and ignoring "the second half of

16   the claim construction that requires timing data from the processor as well."[51]   As proof, GBT

---

[43] *See* Docket No. 599 at 25.

[44] *See id.*

[45] *See id.*

[46] *See id.*

[47] *See id.* at 26 (internal citations omitted).

[48] *See id.*

[49] *See id.* at 26-27.

[50] *See id.* at 27.

[51] *See* Docket No. 578-5 at 7, 10.

11

Case No.: 5:12-cv-04882-PSG
ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
THE ALTERNATIVE FOR NEW TRIAL

United States District Court
For the Northern District of California

1    points to Acampora's assertion that "the header is essentially the master" of the '793 patent is false

2    because the header "only provides half of the timing information under the [c]ourt's claim

3    construction."[52]  GBT also complains Acampora also "re-constructed" claim 7 when he testified

4    that "[t]he court's claim construction said that the processor should receive, and I'm paraphrasing,

5    receives timing from the header then use that to time the data channels."[53]  According to GBT,

6    Acampora's conclusion that the accused products did not infringe was based upon this improper

7    interpretation of the court's claim construction.  Acampora testified that "the timing [in the accused

8    products] does not start by the processor receiving timing from the header" and opined that none of

9    the accused products infringed because "the processor, the claim 7's processor as claimed, which

10   times from the header, times the data channels using timing data from the header, doesn't exist."[54]

11   GBT contends that Apple's counsel similarly "only appl[ied] the half of the claim construction that

12   support[ed] his case" by repeatedly noting that the accused products must "use timing data from

13   the header" in order to infringe.[55]

14        GBT misstates the positions Apple and its witness took at trial.  As stated above, at the

15   *Markman* hearing, GBT and Apple both agreed synchronization involves "timing data from the

16   header" and "timing and control signals from the processor."[56]  The court's construction of this

17   limitation reflects this agreement by requiring use of "timing data from the header and timing and

18   control signals from the processor."[57]  Apple's assertion at trial that synchronizing requires use of

19   timing data from the header thus did not argue outside the court's claim construction but rather

---

[52] *See id.* at 9-10; *see also* Docket No. 595-1, Ex. 1 at 1236:22.

[53] *See* Docket No. 578-5 at 10; Docket No. 595-1, Ex. 1 at 1415:7-10.

[54] *See* Docket No. 595-1, Ex. 1 at 1492:20-21; Docket No. 584-5 at 1292:14-17.

[55] *See* Docket No. 578-5 at 10-11.

[56] *See* Docket No. 599 at 26.

[57] *See id.* at 25.

12

Case No.: 5:12-cv-04882-PSG
ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
THE ALTERNATIVE FOR NEW TRIAL

embraced it.  As Apple notes, the accused products were required to use both "timing data from the header" *and* "timing and control signals from the processor" in order to infringe.[58]  Accordingly, Apple properly argued that the accused devices did not practice the synchronizing limitation if they did not use timing data from the header regardless of whether they used timing.and control signals from the processor.[59]

Further, GBT's contention that Apple's supposed distortion of the court's claim construction had a "material" effect upon the jury's noninfringement verdict fails because Apple did not "argue that the scope of the patent was different from what it was."[60]  In particular, GBT objected at trial that Acampora made a "claim construction argument" by saying that "in order to meet using timing data from the header, the processor has to send timing data, in other words, pilot bits from the header into the processor."[61]  GBT claimed that this assertion misrepresented the court's claim construction because the jury's written questions to the court showed that "at least some members of this jury think that the claim construction language requires that bits be sent from that header into the processor."[62]  GBT now argues that the court should grant JMOL because the jury's noninfringement verdict was based on Apple's "improper contention that the '793 patent required the header channel to dictate timing rather than the correct structure where the processor is in charge."[63]

---

[58] *See* Docket No. 584-4 at 20-21.

[59] *See DeMarini Sports, Inc. v. Worth*, 239 F.3d 1314, 1331 (Fed. Cir. 2001) ("Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device.") (internal citations omitted).

[60] *See* Docket No. 578-5 at 11-12.

[61] *See* Docket No. 595-1, Ex. 1 at 1567:16-20.

[62] *See id.* at 1568:6-15.

[63] *See* Docket No. 589 at 10.

13

Case No.: 5:12-cv-04882-PSG
ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
THE ALTERNATIVE FOR NEW TRIAL

1    However, this argument mischaracterizes both Acampora's testimony and Apple's

2    interpretation of the court's claim construction.  Apple did not argue that the accused devices did

3    not infringe because they lacked "pilot bits" or because they did not put the header channel in

4    charge of timing.  Rather, Acampora testified in order to infringe, "the processor should

5    receive...timing from the header then use that to time the data channels."[64]  Likewise, in response

6    to GBT's objections to Acampora's testimony at trial, Apple argued that its position was not that

7    the header must send "pilot bits" to the processor, but that the patent required use of timing data

8    from the header to time the data channels.[65]  Because the claim requires use of timing data from the

9    header in order to infringe the synchronizing limitation, if anything, Apple embraced rather than

10   distorted the court's construction when it urged that its accused products did not infringe because

11   they did not use "timing data from the header" to synchronize the data channels.[66]

12       *Third*, Apple presented substantial evidence that the accused devices did not practice the

13   synchronizing limitation because they did not use timing data from the header.  Goldberg testified

14   that the accused devices do not use any timing data from the DPCCH register, the accused header,

15   to time the accused data channels.  Goldberg explained that Intel and Qualcomm implementations

---

16   [64] Docket No. 595-1, Ex. 1 at 1415:7-10.

17

18   [65] *See* Docket No. 585-2 at 1572:16-25 ("[GBT] has mischaracterized our interpretation of Your
     Honor's claim construction.  The claim construction doesn't require a pilot bit.  That's not the
19   theory.  That certainly would meet the claim construction if a pilot bit was sent from the header
     device to the processor, clearly that would meet it.  What's required by the claim construction and
20   what's required by the patent is some sort of cause and effect.  It could be a pilot bit, it could be
     something else, but you need a cause and effect.").
21

22   [66] *See* Docket No. 585-2 at 1904:14-16.  GBT also claims that the court must exclude evidence
     regarding "Apple's improper claim construction arguments."  *See* Docket No. 578-5 at 14.  GBT
23   claims that Apple's misconstruction of the synchronizing limitation violated an order the court
     granted to exclude "[a]ny evidence of, reference to or suggestion of the construction of claim terms
24   and arguments about the construction of claim terms rejected by this court." *See id.*; *see also*
     Docket No. 469 at 1.  GBT also contends that Apple committed "litigation misconduct" by refusing
25   to adopt the court's claim construction. *See* Docket No. 578-5 at 14-17.  The court rejects these
     arguments because, as stated above, Apple did not misrepresent the synchronizing limitation at
26   trial.

27                                          14
28   Case No.: 5:12-cv-04882-PSG
     ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
     THE ALTERNATIVE FOR NEW TRIAL

instead use a distinct "common clock approach" in which a master clock is the timing source for the data channels.[67]



Goldberg further explained—and Acampora agreed[69]—that the Intel chips use the master clock mechanism rather than timing data from the header to synchronize the data channels.[70]

---

[67] GBT conceded pretrial that the common clock approach described in the prior art. *See* Docket No. 335 at 15, 17 ("In the specification of [U.S. Patent No. 5,166,951] Dr. Schilling also stated, without elaboration, that a 'common clock' should be used for synchronization...Dr. Schilling's '951 and '793 patents together teach that synchronization of channels in a multicode transmitter can be accomplished in three ways: (1) a pilot signal input from a pilot channel into data channels, (2) *a common clock* or (3) a processor.") (emphasis added).

[68]

[71] *See id.* at 1156:11-14.

Case No.: 5:12-cv-04882-PSG
ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE FOR NEW TRIAL

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1

2



3

4

5

6      Goldberg and Acampora also agreed that the Qualcomm chips do not use timing data from

7  the header to synchronize the data channels.

8

9

10

11

12

13

14

15

16

17

18

19

20

21  [72] *See id.* at 1156:15-25.

22  [73] *See id.* at 1138:24-1139:6, 1189:14-23; *see also id.* at 1290:12-23, 1383:5-13 (Acampora).

23  [74] *See id.* at 1140:4-5.

24  [75] *See id.* at 1140:8-12.

25  [76] *See id.* at 1140:25-1141:3.

26  [77] *See id.* at 1157:23-25.

27                                          16

28  Case No.: 5:12-cv-04882-PSG
    ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
    THE ALTERNATIVE FOR NEW TRIAL

1

Taken as a whole, Goldberg and Acampora's testimony presents substantial evidence that

2 the accused devices do not key the timing of the data channels to the timing of the header channel

3 and instead use the common clock mechanism to time the data channels.

4

GBT contends that Vojcic presented evidence that establishes that the accused products

5 infringe claim 7 under the court's construction because "the accused devices have a processor that

6 provides timing information to the header and other data channels where the timing information is

7 keyed from the header channel."[78]

8

9

10                                                                          Vojcic

11 ultimately opined that the accused products meet the synchronizing limitation:

12

13 > Q: [U]nder the Court's construction, the synchronizing refers to timing the two or more
> data channels using timing data from the header and timing and control signals from the
14 > processor.

15 > Did you find that this language was met?

16 > A: Yes, I did.[80]

17

18

19 [78] *See* Docket No. 578-5 at 3 (citing Docket No. 595-1 at 1008:15-16).

20 

21

22

23

24

25

26 [80] *See* Docket No. 595-1, Ex. 1 at 876:6-11.

27                                                    17

28 Case No.: 5:12-cv-04882-PSG
ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
THE ALTERNATIVE FOR NEW TRIAL

United States District Court
For the Northern District of California

However, Vojcic's "conclusory testimony" that the accused products meet the synchronizing limitation is not sufficient to set aside the jury's verdict.[81]  As stated above, Apple's experts testified that the accused devices used the common clock mechanism, not timing data from the header, to time the data channels.  "The jury is entitled to credit or discredit testimony before it"[82] and the court "may not weigh the evidence or assess the credibility of [Apple and GBT's] witnesses in determining whether substantial evidence exists to support the verdict."[83]  Because "expert testimony was needed to establish infringement, it was not unreasonable for the jury to discredit the testimony of [GBT's] expert and find that [GBT's patent was] not infringed."[84]  In sum, Apple's substantial evidence the accused devices did not infringe the synchronizing limitation is sufficient to sustain the jury's verdict.[85]

*Fourth,* a new trial is not warranted.  GBT contends that the jury's questions to the court show that the jurors were so confused about the proper legal standard that a new trial on infringement is necessary.  During the trial, the jury asked questions during expert testimony.[86]

[81] *See PharmaStem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1351, 1355 (Fed. Cir. 2007) (district court properly found that testimony "in conclusory terms" is not "substantial evidence in support of [plaintiff's] theory of infringement); *Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1320 (Fed. Cir. 2006) (district court properly granted JMOL of noninfringement when plaintiff offered "conclusory testimony" about accused products but "presented no testimony based on the accused products themselves that supported a finding of infringement").

[82] *See Star Scientific*, 655 F.3d at 1378.

[83] *See Transbay Auto Serv., Inc.*, 2013 WL 496098 at *2.

[84] *See Star Scientific*, 655 F.3d at 1378.

[85] GBT also claims that Apple included figures and modified figures from the patent in its opposition and motion for JMOL of invalidity that "show literal infringement was proven at trial by GBT under the proper and applicable claim construction." *See* Docket No. 589 at 2.  The court rejects this argument because GBT's conclusory claim that these figures prove Apple's literal infringement is not sufficient to show that there is no substantial evidence supporting the jury's noninfringement verdict.

[86] *See* Docket No. 595-1, Ex. 1 at 1517:24-1518:1 ("Does the '793 Patent describe the header from the tx only is used for timing or can the patent use the header from the rx to time the frame slot— the tx frame slot symbol[?]"), 1518:5-6 ("Does the process processor use the rx header channel to

18

Case No.: 5:12-cv-04882-PSG
ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
THE ALTERNATIVE FOR NEW TRIAL

1    While the jury was deliberating, it sent the court a note asking "[i]f we see a conflict between claim

2    limitation language and the court construction definition, which takes priority?"[87]  GBT agreed that

3    the court should tell the jurors to defer to the court's claim construction:

> The Court: It seems to me the answer to this question is fairly clear, it's the [c]ourt's
> construction that governs; would you agree?
>
> Apple's Counsel: Absolutely, Your Honor.
>
> GBT's Counsel: I agree, Your Honor.  But I think that's in the instructions itself.
>
> The Court: I thought it was too…I think the simplest thing is to simply tell them it's the
> claim construction, period, end stop.  I think that's consistent with what I said in the earlier
> claim constructions…Any objection…?
>
> GBT's Counsel: I think the right answer is it's in the claim constructions to be provided….
> I should have said that it's in the jury instructions that have been provided.[88]

12   The court then sent a response to the jury that "[t]he answer to your question is that the court's

13   construction definition takes priority."[89]  Soon after this, the jury returned a noninfringement

14   verdict.

15        Nothing in the jury's questions show "obvious jury confusion" about the proper legal

16   standard to apply.[90]  GBT contends that Fed. R. of Evid. 606 did not bar the court from

17   communicating with the jury pre-verdict,[91] and that the court had a duty under the Seventh

---

18   derive inputs for the tx timing block[?]"); 1519:3-5 ("If the tx block, uses the processor output to
19   time when to clock the tx, does that meet the limitation, i.e. processor[?]").

20   [87] See Docket No. 585-2 at 1965:20-21.

21   [88] See id. at 1965:22-1966:22.

22   [89] See id. at 1966:24-1967:1.

23
24   [90] See Docket No. 578-5 at 20.  GBT also contends Apple's misapplication of the synchronizing
     limitation justifies a new trial. See id. at 1-2, 25.  Because as, stated above, Apple did not
25   misrepresent this limitation at trial, this argument fails.

26   [91] See Docket No. 578-5 at 21; see also Fed. R. Evid. 606(b)(1) ("During an inquiry into the
     validity of a verdict or indictment, a juror may not testify about any statement made or incident that
27   occurred during the jury's deliberations; the effect of anything on that juror's or another juror's

                                          19

28   Case No.: 5:12-cv-04882-PSG
     ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
     THE ALTERNATIVE FOR NEW TRIAL

United States District Court
For the Northern District of California

1   Amendment to clarify the jury's confusion rather than ending the jury's fact-finding with an

2   instruction "that suggested the claim text was irrelevant to the matter."[92]   However, GBT did not

3   make "a proper and timely objection to the jury instructions" or request "alternative instructions

4   that would have remedied [any alleged] error" because, as stated above, it agreed with the response

5   the court provided to the jurors.[93]

6          GBT also did not show that "the given jury instructions were legally erroneous" or "had

7   prejudicial effect" upon the verdict.[94]   Because GBT does not contend that the court's construction

8   of the synchronizing limitation was incorrect, it cannot claim that the court's instruction that the

9   jury give priority to this construction was "legally erroneous."[95]   Further, contrary to GBT's

10  allegations, the jury's questions and its return with a noninfringement verdict soon after the court

11  answered its question regarding claim construction is not "unambiguous" or "hard evidence" that

12  the jury was "confused about the legal standard to apply when looking for infringement."[96]   While

13  one might interpret the jury's question about whether the limitation language or the court's

14  construction takes priority in the event of the conflict as jury confusion about legal standard, the

15  question's conditional phrasing—"if we see a conflict"—leaves open the equally plausible

16  conclusion that the jury did not any conflict between the claim limitation and the court's

17  construction.[97]   And to the extent GBT suggests that the jury's question confirms that Apple's

---

18  vote; or any juror's mental processes concerning the verdict or indictment. The court may not
19  receive a juror's affidavit or evidence of a juror's statement on these matters.").

20  [92] See Docket No. 578-5 at 21-23; see also U.S. Const. amend. VII ("In Suits at common law,
    where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be
21  preserved.").

22  [93] See Docket No. 585-2 at 1965:22-1966:22; see also Silicon, 607 F.3d at 799.

23
    [94] See id.
24
    [95] See id.
25
26  [96] See Docket No. 578-5 at 20-21; see also Docket No. 589 at 6.

27  [97] See Docket No. 584-4 at 14.
                                                    20
28  Case No.: 5:12-cv-04882-PSG
    ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
    THE ALTERNATIVE FOR NEW TRIAL

1    purported distortion of the synchronizing limitation at trial confused the jury, this argument fails

2    because as stated above, Apple did not misrepresent this limitation at trial.[98]  Because GBT does

3    not establish that the court's response to the jury was erroneous or prejudicial. a new trial is simply

4    not warranted.[99]

5           *Fifth*, the court does not need to revise its claim construction order.  GBT contends if the

6    court finds that Apple did not argue outside of the court's claim construction, the court should

7    revise its construction of the "synchronizing the plurality of data channels" term.[100]  The parties

8    dispute the property of further claim construction at this stage of the litigation as well as whether

9    GBT waived its ability to object to the court's construction of the synchronizing term.

10          However, the court need not reach the issues of whether GBT waived this this argument or

11   whether further claim construction post-verdict is proper because GBT does not show that re-

12   construction is warranted.  As stated above, GBT does not claim that the court misconstrued the

13   synchronizing limitation.  To the contrary, GBT acknowledges that the court's construction "finds

14   abundant support in the patent specification and file [history]."[101]  Instead, GBT claims that

15   revision is required because the court's construction of this claim was "vague enough" to allow the

16   parties to continue the claim construction dispute at trial.[102]  Because Apple did not, as GBT

17   claims, argue outside the court's construction of the synchronizing limitation, the court does not

18   need to re-construe this term.

19          *Sixth*, the court did not violate the Seventh Amendment by construing the claims rather

20   than allowing the jury to decide claim construction.  GBT acknowledges that *Markman* holds that

---

[98] *See* Docket No. 578-5 at 19-23; *see also* Docket No. 589 at 5-6.

[99] *See Silicon*, 607 F.3d at 799.

[100] *See* Docket No. 578-5 at 17.

[101] *See id.* at 6 n.3.

[102] *See id.* at 18.

21

United States District Court
For the Northern District of California

claim construction "is exclusively within the province of the court," but contends that having the judge rather than the jury construe claims deprives parties of the right to jury trial under the Seventh Amendment "in a manner that cannot be allowed to persist."[103]  GBT argues that giving "claim construction duties to the [j]ury" here would further the policies underlying *Markman* because the jury was "skilled in the art" and had "training in exegesis."[104]  Whatever the merits of this assertion, as stated above, GBT waived this argument because it did not ask the court to hand claim construction to the jury before the jury presented a verdict.  Further, regardless of whether GBT is correct that *Markman* "may be soon overturned," the court will not adopt an approach to claim construction that GBT admits is "adverse to established precedent."[105]  As a result, GBT's argument that the court should hand claim construction duties to the jury does not justify an entry of JMOL or a grant of a new trial.

## IV.

Because the court finds that substantial evidence supports the jury's noninfringement verdict, GBT's motion for JMOL or in the alternative for a new trial is DENIED.

---

[103] *See id.* at 23; *see also Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S.Ct. 831, 837 (2015) ("The question presented in [*Markman*] was a Seventh Amendment question: Should a jury or a judge construe patent claims? We pointed out that history provides no clear answer. The task primarily involves the construction of written instruments. And that task is better matched to a judge's skills. We consequently held that claim construction falls exclusively within the province of the court, not that of the jury.") (internal citations omitted).

[104] *See* Docket No. 578-5 at 24.

[105] *See id.*

22

Case No.: 5:12-cv-04882-PSG
ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
THE ALTERNATIVE FOR NEW TRIAL

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SO ORDERED.**

Dated: March 18, 2015

Paul S. Grewal

PAUL S. GREWAL
United States Magistrate Judge

23

Case No.: 5:12-cv-04882-PSG
ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN
THE ALTERNATIVE FOR NEW TRIAL