UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GOLDEN BRIDGE TECHNOLOGY, INC., <br><br>    Plaintiffs, <br><br> v. <br><br> APPLE, INC., <br><br>    Defendants. | Case No. 5:12-cv-04882-PSG <br><br> **ORDER DENYING APPLE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL** <br><br> **(Re: Docket No. 577)** |

"The presumption of validity under 35 U.S.C. § 282 carries with it a presumption the examiner did his duty and knew what claims he was allowing."[1]  Considering what we know about the crushing burden on patent examiners, and limited resources available to them, the wisdom of either of these presumptions might appear dubious at best.[2]  But Congress and the appellate courts have made this bed, and trial courts are duty-bound to lie in it.  This case offers yet another example that such decisions matter.

---

[1] *Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1054 (Fed. Cir. 1989).

[2] *See generally*, Doug Lichtman & Mark A. Lemley Rethinking Patent Law's Presumption of Validity, 60 STAN. L. REV. 45 (2007).

1
Case No.: 5:12-cv-04882-PSG
ORDER DENYING APPLE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

United States District Court
For the Northern District of California

A jury found that Defendant Apple, Inc. failed to prove Claim 7 of United States Patent No. 6,075,793 was either anticipated or obvious. Apple now renews its motion for judgment as a matter of law that Claim 7 was anticipated by United States Patent No. 6,175,558 ("Matsushita") and obvious in light of the same as well as United States Patent No. 5,896,374 ("Adachi") and FRAMES.[3] Apple also conditionally moves for a new trial.[4] Because the jury relied on substantial evidence presented at trial to reach its conclusion on anticipation and the factual issues underlying obviousness, the jury's ultimate conclusion on obviousness was correct as a matter of law and a new trial is not warranted, the court DENIES Apple's motion.

## I.

In enacting the 1952 Patent Act, Congress codified the "'existing presumption of validity of patents' . . . what, until that point, had been a common-law presumption based on 'the basic proposition that a government agency such as the [PTO] was presumed to do its job.'"[5] To that end, Section 282 commands that "[a] patent shall be presumed valid. . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."[6] A defendant must prove invalidity by clear and convincing evidence.[7] "The Federal Circuit has never wavered in this interpretation of § 282."[8]

---

[3] *See* Docket No. 577 at 1-2 ("FRAMES is an early, prior art draft of the Wideband Code Division Multiple Access standard that Plaintiffs Golden Bridge Technology, Inc. accused of infringement. FRAMES is described in the Concept Group Alpha 905/97 publication (Ex. 1369) and also described in the similar Concept Group Alpha 270/97 publication (Ex. 1368) and Ojanpera, "FRAMES Multiple Access For [Universal Mobile Telecommunications System]" ("Ojanpera," Exs. 5 and 1354)").

[4] *See id.*

[5] *Microsoft Corp. v. i4i Ltd. Partnership*, 131 S.Ct 2238 at 2243 (2011) (quoting *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F. 2d 1350 (Fed. Cir. 1984) (Rich, J.)).

[6] 35 U.S.C. § 282. *See also Microsoft*, 131 S.Ct at 2243 ("Relying on this Court's pre-1952 precedent as to the 'force of the presumption,' Judge Rich concluded: '[Section] 282 creates a presumption that a patent is valid and imposes the burden of proving invalidity on the attacker.

2
Case No.: 5:12-cv-04882-PSG
ORDER DENYING APPLE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

GBT brought this suit against Apple for infringement of the '793 patent by Apple's iPhone 4, iPhone 4S, iPhone 5 and iPad 2nd Generation.[9] GBT contends that these Apple products specifically infringe by virtue of chips made by Qualcomm Technologies, Inc. and Intel Corporation.[10] GBT is the owner of the '793 patent by assignment.[11]

The '793 patent discloses a "multichannel-spread-spectrum system for communicating a plurality of data-sequence signals from a plurality of data channels using parallel chip-sequence signals in which fewer than all of the channels include header information."[12] Prior art spread-spectrum systems taught each channel to transmit pilot signals and other header information as well as data.[13] The '793 patent allegedly improved upon the prior art by synchronizing data channels by putting pilot signals and other header information in only one channel, rather than all channels.[14]

---

That burden is constant and never changes and is to convince the court of invalidity by clear evidence.") (citing 725 F. 2d at 1360; *Radio Corp. of America v. Radio Engineering Laboratories, Inc.*, 293 U.S. 1 (1934)).

[7] *See id.* at 2242.

[8] *Id.* (*citing Greenwood v. Hattori Seiko Co.*, 900 F. 2d 238, 240–241 (Fed. Cir. 1990); *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chemical Co.*, 204 F. 3d 1360, 1367 (Fed. Cir. 2000); *ALZA Corp. v. Andrx Pharmaceuticals, LLC*, 603 F. 3d 935, 940 (Fed. Cir. 2010)).

[9] *See* Docket No. 497 at 230:23-25.

[10] *See id.* at 247:13-20.

[11] *See* Docket No. 595-1, Ex. 1 at 246:16.

[12] *See* Docket No. 306-2.

[13] *See* Docket No. 461 at 2 (internal citations omitted).

[14] *See id.*; *see also* Docket No. 595-1, Ex. 1 at 411:19-25.

Removing the header in all but one channel allegedly improves efficiency by allowing the '793 transmitter to transmit more data in the same bandwidth as other transmitters.[15]

Figure 3 shows a schematic of the invention:



FIG. 3

Claim 7 of the '793 patent, the only asserted claim at issue, requires:

> 7. A multichannel-spread-spectrum transmitter for communicating a plurality of data-sequence signals from a plurality of data channels using parallel chip-sequence signals, comprising:
>
> a header device, coupled to a first data channel of said plurality of data channels, for concatenating a header to a first data-sequence signal to generate a header frame;

---

[15] *See* Docket No. 461 at 2; *see also* Docket No. 306-2 at col. 2:3-40.

4
Case No.: 5:12-cv-04882-PSG
ORDER DENYING APPLE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

a processor, coupled to the header device and to the plurality of data channels, for synchronizing the plurality of data channels.[16]

The parties requested that the court construe ten claims.[17] The court held a claim construction hearing[18] and issued a summary construction order the next day.[19] Following the claim construction hearing, Apple moved for summary judgment of invalidity, noninfringement and no pre-suit damages. Each motion was denied.[20]

At trial, the various issues regarding invalidity ultimately boiled down to one key issue: whether the accused products infringed the portion of claim 7 that describes "a processor, coupled to the header device and to the plurality of data channels, for synchronizing the plurality of data channels."[21] Although neither party ever requested construction of this limitation, and thus waived any right to construction now,[22] they presented opposing expert testimony on whether three prior art references—Matsushita, Adachi and FRAMES—anticipated Claim 7 or rendered it obvious. None of the references was previously considered by the Patent Office. At the close of evidence, pursuant to Fed. R. Civ. P. 50(a), Apple moved for judgment as a matter of law on the issue of patent validity as well as others, which the court denied.[23] Neither party requested that the jury answer any special interrogatories and the verdict form requested a general verdict.[24] Ultimately, the jury returned a verdict that the '793 patent was neither anticipated nor obvious.[25]

---

[16] *See* Docket No. 306-2 at col. 12:14-24.

[17] *See* Docket No. 282.

[18] *See* Docket No. 281.

[19] *See* Docket No. 282. The court later provided a more complete order explaining the court's reasoning. *See* Docket No. 599.

[20] *See* Docket No. 461.

[21] *See* Docket No. 306-2 at col. 12.21-24.

[22] *See Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006).

[23] *See* Docket No. 527.

[24] *See* Docket No. 523 at 14-22; Docket No. 533 at 2.

5
Case No.: 5:12-cv-04882-PSG
ORDER DENYING APPLE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

Pursuant to Fed. R. Civ. P. 50(b), Apple now renews its motion that Claim 7 is invalid as a matter of law. [26]

**II.**

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338.  The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[27]

Rule 50(b) provides that, upon a renewed motion for JMOL, the court may:  (1) "allow judgment on the verdict, if the jury returned a verdict," (2) "order a new trial" or (3) "direct the entry of judgment as a matter of law."[28]  "Where a party moves for JMOL in a case that has been tried to a jury, the district court 'must determine whether there exists evidence of record upon which a jury might properly have returned a verdict in [the non-movant's] favor when the correct legal standard is applied.  If there is not, [the movant] was entitled to have the question removed from the jury and decided as a matter of law.'"[29]

"[T]he legal standards that the jury applies, expressly or implicitly, in reaching its verdict are considered by the district court and by the appellate court de novo to determine whether those standards are correct as a matter of law."[30]  In contrast, "the jury's factual findings receive

---

[25] *See* Docket No. 548.

[26] *See* Docket No. 595-1, Ex. 13.  The jury also found that Claim 7 was not infringed.  The court has since denied GBT's motion for JMOL or a new trial on the issue of infringement.  *See* Docket No. 607.

[27] *See* Docket Nos. 256, 257.

[28] Fed. R. Civ. P. 50(b).

[29] *Markman v. Westview Instruments*, 52 F.3d 967, 975 (Fed. Cir. 1995).

[30] *Id.*

6
Case No.: 5:12-cv-04882-PSG
ORDER DENYING APPLE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

substantial deference on motion for JMOL."[31]  To grant a Rule 50(b) motion based upon flaws in the jury's factual findings, the court must determine that "the evidence, construed in the light most favorable to the non-moving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's."[32]  The court must "draw all reasonable inferences" in favor of the jury's verdict.[33]  In other words, to set aside the verdict, there must be an absence of "substantial evidence"—meaning "relevant evidence that a reasonable mind would accept as adequate to support a conclusion"—to support the jury's verdict.[34]

---

[31] *Id.*

[32] *Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)) ("The Ninth Circuit upholds any jury verdict supported by substantial evidence."); *see also Geo M. Martin v. Alliance Machine Sys.*, 618 F.3d 1294, 1299-1306 (Fed. Cir.  2010) (quoting *White v. Ford Motor*, 312 F.3d 998, 1010 (9th Cir. 2002)).

[33] *Transbay Auto Serv., Inc. v. Chevron U.S.A., Inc.*, Case No. 09-cv-04932-SI, 2013 WL 496098, at *2 (N.D. Cal. Feb. 7, 2013) (quoting *Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006)) ("We must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor.").

[34] *Id.*  "Substantial evidence is more than a mere" scintilla.  *Chisholm Bris. Farm Equip. Co. v. Int'l Harvester Co.*, 498 F.2d 1137, 1140 (9th Cir. 1974) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It constitutes "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence."  *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).  "In ruling on such a motion, the trial court may not weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists to support the verdict."  *Id.*  (citing *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir. 1984) ("Neither the district court nor this court may weigh the evidence or order a result it finds more reasonable if substantial evidence supports the jury verdict.")).  *See also Integra Lifesciences I, Ltd. v. Merck KGaA*, 496 F.3d 1334, 1345 (Fed. Cir. 2007) ("[On JMOL,] the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached.'") (citations omitted).

The court may order a new trial where the verdict is contrary to the clear weight of the evidence.[35]

## III.

A patent claim is anticipated if "patented, described in printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention."[36]  "Anticipation is a question of fact, and a jury determination of anticipation is reviewed for substantial evidence."[37]  A patent is obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains."[38]  The court "reviews a jury's conclusions on obviousness, a question of law, without deference, and the underlying findings of fact, whether explicit or implicit within the verdict, for substantial evidence."[39]  "Those factual underpinnings include the scope and

---

[35] *See* Fed. R. Civ. P. 59(a); *Molski v. M.J. Cable*, 481 F.3d 724, 729 (9th Cir. 2007).  Because Apple does not contend that any of the five jury instructions regarding validity were improper, *see* Docket No. 523 at 14-22; Docket No. 586 at 5, the court does not consider whether the jury applied the wrong law.

[36] 35 U.S.C. § 102(a).

[37] *Minnesota Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002) (citing *Acromed Corp. v. Sofamor Danek Group, Inc.,* 253 F.3d 1371, 1378–79 (Fed.Cir. 2001)).

[38] 35 U.S.C. § 103(a).  A party seeking to invalidate a patent on the basis of obviousness must "demonstrate 'by clear and convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so.'" *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342 (Fed. Cir. 2012) (quoting *Procter & Gamble Co. v. Teva Pharm. USA, Inc.,* 566 F.3d 989, 994 (Fed.Cir.2009); *Pfizer, Inc. v. Apotex, Inc.,* 480 F.3d 1348, 1361 (Fed. Cir. 2007)).

[39] *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1324 (Fed. Cir. 2008) (citing *Dippin' Dots, Inc. v. Mosey,* 476 F.3d 1337, 1343 (Fed. Cir. 2007); *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.,* 275 F.3d 1347, 1353 (Fed. Cir. 2001)); *accord PharmaStem Therapeutics, Inc. v.*

content of the prior art, differences between the prior art and the claims at issue . . . the level of ordinary skill in the art"[40] and objective indicia of nonobviousness,[41] such as licensing.[42] On the record presented at trial, the court holds that Apple failed to meet its burden of proving either anticipation or obviousness by clear and convincing evidence.

*First,* substantial evidence support the jury's finding that Matsushita does not anticipate the '793 patent because it does not disclose the required processor.[43] GBT technical expert Dr. Branimir Vojcic testified that one "inventive aspect" of the '793 patent was a "processor for synchronization that would, in addition to other things . . . synchronize these channels, parallel channels."[44] The only element in Matsushita identified as such by Apple was the "separation circuit."[45] Vojcic explained to the jury that a PHOSITA would understand that a separation circuit is a stand-alone circuit used to "demultiplex," or split, a data stream into multiple parallel

---

*ViaCell, Inc.,* 491 F.3d 1342, 1360 (Fed. Cir. 2007) (citing *Caver v. City of Trenton,* 420 F.3d 243, 262 (3d Cir. 2005)). *See also KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 506 (2007).

[40] *Muniauction*, 532 F.3d at 1324 (citing *Dippin' Dots*, 476 F.3d at 1343; *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966)).

[41] *See KSR*, 550 U.S. at 406, 417 ("[I]f a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill."); 35 U.S.C. § 103(a) (holding the party seeking invalidity must prove "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains.").

[42] *See, e.g.*, *Smith & Nephew*, 688 F.3d at 1367.

[43] *See* Docket No. 577 at 12-16.

[44] Docket No. 586-2 at 838:21-839:5.

[45] Docket No. 461 at 16.

9
Case No.: 5:12-cv-04882-PSG
ORDER DENYING APPLE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

streams—an explanation supported in the '558 patent itself.[46] He then explained that a synchronizing processor would not necessarily exist within a separation circuit, because the switches could be controlled without a processor such as by using pre-wiring or a common clock.[47]

Apple does not seriously dispute that Vojcic's testimony offers substantial evidence that the separation circuit in Matsushita shows a demultiplexor. Relying heavily on the testimony of its expert Dr. Anthony Acampora, Apple argues instead that the reference also undeniably teaches "ramp-up," "ramp-down" and other signals that control timing and must be generated by something (i.e., a processor).[48] The short answer is that, on this point anyway, the jury believed Vojcic over Acampora. This was the entire point of denying summary judgment on this issue and asking a jury to sort out the conflicting evidence.[49] That the jury picked one expert over another does not, as Apple now suggests, render the winning expert's testimony "conclusory."[50]

---

[46] *Id.*

[47] *See* Docket No. 586-2 at 1695:20-1696:6.

> Q. In your opinion, would a person of ordinary skill in the art in 1998 have understood that there was a processor in this separation circuit?
>
> A. No, not at all. For similar reasons that I just explained with respect to Adachi article and '951 Schilling patent. The separation circuit is essentially also to power converter or demultiplexor that takes one high data rate line and splits data or demultiplexes data into lower power rate lines, signal lines.
>
> Q. So did I understand correctly that this separation circuit is simply another demultiplexor?
>
> A. That's correct.

[48] Docket No. 590 at 5-6.

[49] *See* Docket No. 461 at 15-16.

[50] *See Smith & Nephew*, 688 F.3d at 1362 ("Because of this conflicting expert testimony, the jury was free to 'make credibility determinations and believe the witness it considers more trustworthy.'") (quoting *Streber v. Hunter*, 221 F.3d 701, 726 (5th Cir. 2000)); *cf.* Docket No. 585 at 19 ("Under the circumstances here, the jury was . . . free to reject Dr. Vojcic's testimony")

10
Case No.: 5:12-cv-04882-PSG
ORDER DENYING APPLE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

Equally flawed is Apple's alternative suggestion that the jury relied on an improperly narrow construction of processor from Vojcic as requiring a DSP or ASIC. Apple's briefs cite no testimony from Vojcic offering any such construction. In any event, Apple concedes it does not challenge the court's instructions to the jury, and those instructions were explicit that "[a]ny terms not construed below should be interpreted according to their plain and ordinary meaning."[51]

***Second***, none of the asserted references render Claim 7 obvious as a matter of law. In evaluating obviousness, courts must consider each *Graham* factor.[52] The parties agree that Matsushita, Adachi and FRAMES are prior art. Their disagreement is focused largely on the motivation or suggestion to combine one or more of these references with others in the field teaching the missing processor, an issue the court focuses on below in affirming the jury's verdict that Claim 7 is not obvious.

Matsushita discloses concatenating the header (pilot) with data in a first channel, while sending a plurality of channels that carry only data.[53] Before trial, the court determined that a reasonable jury could only find that all limitations of Matsushita are disclosed except for the processor.[54] Neither party sought reconsideration of that decision.[55]

---

(citing *Star Scientific v. RJ Reynolds Tobacco*, 655 F.3d 1364, 1378 (Fed. Cir. 2011) ("[I]t was not unreasonable for the jury to discredit the testimony of [plaintiff]'s expert.")).

[51] *See* Docket No. 523 at 8-9.

[52] *Smith & Nephew*, 688 F.3d at 1360 (citing *In re Cyclobenzaprine Hydrocholoride Extended-Release Capsule Patent Litig*., 676 F.3d 1063, 1076-77 (Fed. Cir. 2012)).

[53] *See* Docket No. 577 at 12-13.

[54] *See* Docket No. 461 at 8, *et seq.* ("The '558 Patent Discloses All Limitations of the Claims Other Than A Processor"); Fed. R. Civ. P. 56(g).

[55] *See, e.g.*, Docket No. 577-2 at 1767:6-1768:11.

11
Case No.: 5:12-cv-04882-PSG
ORDER DENYING APPLE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

Adachi teaches a multichannel spread spectrum transmitter that concatenates header/pilot with data on fewer than all channels and transmits only data on other channels.[56] Adachi explains that the header information in one channel can be used for other channels, so the transmitter does not need to send the header information on all of the channels: "The respective channels, however, experience the same fading, and hence *it is unnecessary to send the pilot symbols through the plurality of channels*."[57] Similarly, the control information is sent only on one of the channels: "[T]he CDMA system in accordance with the present invention can *transmit the pilot symbols and control data through one of a plurality of channels, the other of which transmit high speed data*."[58] The other channels do not transmit either pilot symbols or control data, and are synchronized to the control channel so that they "do not transmit the portions corresponding to the pilot symbols and the control data."[59] FIG. 26 shows an embodiment of Adachi's multichannel transmitter, and FIG. 27 shows the transmission of multiple channels with header only on one of them.[60]

---

[56] *See* Docket No. 577-7, Ex. 11.

[57] *Id.* at '374 col. 2:49-57 (emphasis added).

[58] *Id.* at '374 col. 11:53-62 (emphasis added); *id.* at col. 24:66-25:27.

[59] *Id.* at '374 col. 25:5-27.

[60] *See* Docket No. 577 at 19, Ex. 11.0033-34. *See also* Docket No. 577-2 at 1241:6-1265:8; Docket Nos. 577-7, Ex. 11; Docket Nos. 577-11-12, Ex. 1358; claim 7 preamble (Docket No. 577-2 at 1257:3-18), "header device" element (Docket No. 577-2 at 1257:19-1258:18; Docket No. 577 at 19, Ex. 11.0033-34, item 130), "processor" element (Docket No. 577-2 at 1258:19-1260:1; Docket No. 577 at 19, Ex. 11.0033-34, item 106A), "chip sequence generator" element (Docket No. 577-2 at 1260:2-1261:20; Docket No. 577 at 19, Ex. 11.0033, items 109a-c; Docket Nos. 577-11-12, Ex. 1358; Docket No. 577-2 at 1247:1-13 [Adachi discloses orthogonal codes, obvious to combine with Adachi '374]), "plurality of product devices" element (Docket No. 577-2 at 1261:21-1263:11; Docket No. 577 at 19, Ex. 11.0033 [items 109, channels outputs 102b-c]), "combiner" element (Docket No. 577-2 at 1263:12-25; Docket No. 577 at 19, Ex. 11.0033, item 148, col. 24:61-65), "transmitter subsystem" element (Docket No. 577-2 at1264:1-1265:3; Docket 577-7, Ex. 11, col. 2:58-62); secondary factors (Docket No. 577-2 at 1279:15-1282:21).

The FRAMES 905/97 and 270/97 publications,[61] along with the related Ojanpera publication[62] regarding FRAMES, teach a WCDMA radio-interface that provides: (1) support for high-data-rate transmission; (2) high service flexibility with support of multiple parallel variable-rate services on each connection; (3) efficient packet access; (4) built-in support for future capacity/coverage-enhancing technologies, such as adaptive antennas, advanced receiver structures, and transmitter diversity; (5) support of inter-frequency handover for operation with hierarchical cell structures and handover to other systems, including handover to Global System for Mobile Communications and (7) both frequency division duplexing and time-division duplexing operations.[63] FRAMES shows multiple data channels[64] as well as using a processor, including both a DSP and an ASIC.[65]

With respect to the level of ordinary skill in the art, Acampora opined that the artisan would have at least a master's degree in electrical engineering with 3-4 years of practical experience in the wireless communications, or the equivalent thereof.[66] Vojcic similarly offered that the artisan would have a bachelor's segree in electrical engineering, telecommunications or equivalent field of study and 4-5 years' experience in the field of wireless telephone communication, or a master's degree in electrical engineering, telecommunications or equivalent field of study and 1-2 years'

---

[61] *See* Docket No. 577-13, Ex. 1368; Docket Nos. 577-14-18, Ex. 1369.

[62] *See* Docket No. 577-5, Ex. 5.

[63] *See also* Docket No. 577-2 at 1299:10-1307:1, 1471:11-1473:10.

[64] *See* Docket No. 577-13, Ex. 1368.0013 ("each *additional DPDCHs* is code multiplexed on either the I- or the Q-branch with this first channel pair") (emphasis added); Docket No. 577-2 at 1315:11-1316:7 ("It could be any number, but again one would understand that's up to the number of codes that are available. But certainly more than two."); Docket No 577 at 23.

[65] *See* Docket Nos. 577-14-18, Ex. 1369.0074, -.0083, -.0085, -.0088-90; Docket No. 577-2 at 1728:24-1730:5; Docket No. 577 at 22.

[66] *See* Mead Decl. 306-11, Acampora Rep. at ¶¶ 46-48.

experience in the field of wireless telephone communication.[67] Even if either party asserted any material difference in the experts' skill estimates—which they do not—the court must assume, in light of the jury's verdict, that it adopted the lower level of skill.[68]

With respect to differences between the claimed invention and the prior art, in previously denying Apple's summary judgment motion, the court held as a matter of law that the prior art disclosed every limitation save one—the processor to control switching.[69] This left to the jury the question of whether the processor limitation, too, was disclosed. In light of its verdict, the jury must be assumed to have answered that question in the negative, and substantial evidence supports this finding.

As explained above, the separation circuit in Matsushita does not qualify. The same is true of each of the other references presented. To be sure, Acampora testified that PHOSITAs had used processors before February 1998.[70] But the jury also heard Vojcic's testimony that using a processor for controlling switching as required by the claimed invention had not been taught. For example, he explained that while Adachi disclosed a controller, its main function "is to facilitate interleaving function, data interleaving" and so a PHOSITA at the time would not have understood

---

[67] *See* Docket No. 306-10, Vojcic Rep. at ¶ 22.

[68] *See Smith & Nephew*, 688 F. 3d at 1366 (citing *Innovention Toys, LLC v. MGA Entm't, Inc.*, 637 F.3d 1314, 1323 (Fed. Cir. 2011)).

[69] *See* Docket No. 461 at 17-18 ("To be sure, there is no genuine dispute that processors were well-known at the time of the '793 patent, and the Federal Circuit has affirmed that applying well-known electronics to prior art can be 'common place,' 'nothing new,' and 'familiar.' But this finding still requires evidence . . . that there was both a reason to make the combination and that the combination, and not merely the component, was within the skill of the ordinary artisan . . . while Acampora offers the bald conclusion that the combination was obvious, he offers no analysis or other evidence regarding the ability or inclination to combine. In any event, Vojcic offers testimony to the contrary, highlighting the additional cost and complexity of the combination. A jury is required to sort out this factual dispute before the court can say as a matter of law whether the '793 patent is obvious.").

[70] Docket No. 577-2 at 1210:13-1212:7; *see* Docket No. 577 at 7.

14
Case No.: 5:12-cv-04882-PSG
ORDER DENYING APPLE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

Adachi to have incorporated a processor.[71] There was no teaching or mentioning, and implementation would have been too functionally costly.[72] Regarding FRAMES, Vojcic similarly testified that the references did not teach that a processor could be used to perform timing synchronization.[73] Vojcic further testified that "none of the references gave a suggestion that a processor could be used to perform the timing synchronization. So even though there are multiple perhaps possibilities in the art . . . you couldn't just sort of use invention or patent as a road map and then say oh, I could use this, I could use that, because obviously these references didn't have intention to do anything like what is claimed in Dr. Schilling and Dr. Garodnick paper."[74]

Even if the art generally disclosed processors, Apple still needed to proffer evidence that a PHOSITA would combine such processors with the references "to arrive at the claimed invention."[75] "Significantly, whether there is a reason to combine prior art references [also] is a

---

[71] *See* Docket No. 586-2 at 1697:20-1698:3.

[72] *See id.* at 1691:1-1692:4 ("First . . . there's no teaching in this reference, Adachi article, that processor would be used for synchronization. . . . there is no even mentioning of the processor. So at that time of the time of this reference or in particular the time of also the patent at issue, mid to late 90', processors . . . were well established elements . . . . And this device here, slot device in this reference is simply a demultiplexor. . . . a simple circuit that was used very well before processors were known. And since it's so simple circuitry, it would be sort of very expensive to put processor in such circuit. So from the description of this patent it wouldn't be necessary. So from the description of this reference or this figure in Adachi article, person of ordinary skill in the art could preclude actually contrary to what Dr. Acampora testified. . . . It wouldn't even cross his mind that there would be a processor inside."). *See also* Docket No. 586-2 at 1719:17-1720:4 ("You could use DSP to implement that controller. The question is whether . . . that could be at the time of those patents an efficient solution. And I would say probably implementing DSP for just, you know, inside interleaver block may not be efficient solution because DSP, for that exact time for 97 for '374 patent, right, the time of publication, it was still expensive and bulky and interleaver was sort of a controller for the interleaver. It was a relatively simple functionality you really didn't need the DSP.").

[73] *See* Docket No. 586-2 at 1702:10-1703:2.

[74] *Id.* at 1702:10-1703:2.

[75] *Smith & Nephew*, 688 F.3d at 1366-67 (citing *Innogenetics, N.V. v. Abbott Laboratories*, 512 F.3d 1363, 1374 (Fed. Cir. 2008)).

15
Case No.: 5:12-cv-04882-PSG
ORDER DENYING APPLE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

question of fact."[76] Even as it acknowledged that the combination was possible,[77] GBT presented substantial evidence that a PHOSITA had no reason to combine.[78] In fact, the jury heard substantial evidence that the processor in the '793 patent would have been more expensive and complex with no obvious advantage.[79] Vojcic in particular explained that all of the prior art missed the processor limitation because "[t]here was no suggestion of doing that synchronization in such a matter as claimed in the processor limitation of claim seven."[80] While Acampora offered contrary evidence,[81] nothing more is required to defer to the jury's implicit finding.

Turning to the objective indicia of nonobviousness, the court's considerations include "commercial success, longfelt but unresolved need, failure of others and copying. When present, such objective evidence must be considered. It can be the most probative evidence of nonobviousness in the record, and enables the district court to avert the trap of hindsight."[82]

The record provides little evidence either way. In just over three pages of transcript, Acampora offered cursory testimony as to a number of secondary factors. "There was no

---

[76] *Id.* (citing *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1303 (Fed. Cir. 2010)).

[77] *See* Docket No. 586 at 10. *See also* Docket No. 586-2 at 1731:20-24 ("I don't think [the '558] patent teaches that it was generated by processor or how it was generated. It was just stated that these signals are used for the function that I just described. So yes, it could be done in several different ways. I haven't talked about all the ways how they could be done."); *id.* at 1731:16-22 ("[A]gain, I don't think patent teaches that it was generated by processor or how it was generated. It was just stated that these signals are used for the function that I just described.").

[78] *See* Docket No. 586-2 at 1689:15-22.

[79] *See id.* at 1691:1-1692:4.

[80] *See id.* at 1689:15-22.

[81] *See, e.g.*, *id.* at 1210:13-1212:7. *See also id.* at 732:7-13 (Liu).

[82] *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 960-61 (Fed. Cir. 1986) (citations omitted).

16
Case No.: 5:12-cv-04882-PSG
ORDER DENYING APPLE'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

commercial success linked to . . . claim seven . . . all of this was in the prior art. . . . I'm not aware of any long felt need for any advantages suggested by claim seven. . . . I don't know anyone who tried, so I don't know anyone who failed [to make claim seven] . . . I'm not aware of anyone having copied claim seven . . . anything that resulted in claim seven was entirely predictable," and, he said, no praise, licensing, surprise or departure from conventional wisdom indicated people thought claim seven was valid.[83] To be fair, GBT does not do too much better, offering less than two pages on little more than its licensing success with major public cellphone companies.[84] Absent any evidence showing the required nexus, the court cannot say this supplies substantial evidence to support any implicit finding of objective indicia of nonobviousness. But "the absence of objective evidence does not preclude a holding of nonobviousness because such evidence is not a requirement for patentability."[85]

Having determined substantial evidence supports various implicit findings by the jury, the court must "examine the [ultimate] legal conclusion [of nonobviousness] de novo to see whether it is correct in light of" these findings.[86] Based on these findings, the court concludes that the jury got it right.

To start, the court heeds the Federal Circuit's admonition to "be careful not to allow hindsight reconstruction of references to reach the claimed invention without any explanation as to how or why the references would be combined to produce the claimed invention."[87] Even though

---

[83] *See* Docket No. 577 at 18 (citing Docket No. 577-2 at 1279:15-1282:21); Docket No. 590 at 4.

[84] *See* Docket No. 586 at 5 n.3 (citing Docket No. 504 at 631:20-632:3).

[85] *Custom Accessories*, 807 F.2d at 960-61 (citations omitted).

[86] *Smith & Nephew*, 688 F.3d at 1368 (quoting *Jurgens v. McKasy*, 927 F.2d 1552, 1557 (Fed. Cir. 1991)).

[87] *Id.* (quoting *Innogenetics*, 512 F.3d at 1374 n.3).

an explicit teaching in the prior art is not required, clear and convincing evidence requires more than just creeping determinism.

Apple offers insufficient evidence explaining why a PHOSITA would combine the primary references with a processor to synchronize the parallel channels to obtain the claimed invention. "Although expert testimony regarding motivation to combine is not always required, the technology at issue here is not the type of technology where common sense would provide the motivation to combine."[88] Apple leans hard on evidence from Vojcic and Schilling that the combination was possible and even easy.[89] But GBT is right that possibility and ease do not automatically translate to motivation. Apple also relies primarily on various cases dealing with patents that simply translated a mechanical device into an electronic one.[90] But incorporating the claimed processor was no mere mechanical to electronic translation.

While Acampora disagreed, Vojcic testified repeatedly *why* there was no reason to add the claimed processor to the references. He alternatively highlighted the expense of a processor, their relative scarcity at the time and the overkill of using a processor to perform demultiplexing or interleaving that a much simpler circuit could perform.[91] As such, Apple's evidence was not, as

---

[88] *Id.* at 1369 (citing *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1240 n.5 (Fed. Cir. 2010)).

[89] *See, e.g.,* Docket No. 577-2 at 460:18-461:10; Tr. 458:17-459:15; 459:24-460:5; 1731:16-1732:10.

[90] *See, e.g. Leapfrog v. Fisher-Price*, 485 F.3d 1157, 1161-62 (Fed. Cir. 2007); *Agrizap v. Woodstream*, 520 F.3d 1337, 1344 (Fed. Cir. 2008).

[91] *See* Docket No. 586-2 at 838:21; 1691:1-1692:4; 1689:15-22; 1697:20-1698:3; 1702:10-1703:2; 1719:17-1720:4.

Apple suggests, "uncontradicted and unimpeached."[92]  Under such circumstances, "hindsight provides the only discernable basis to combine the prior art references."[93]

The court fully appreciates that processors were not new at the time of the '793 patent.  But "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art."[94]  Because none of the prior art references disclosed a processor for synchronizing the parallel channels, the '793 patent did more than just combine known elements.

Finally, while the record is devoid of any substantial evidence of objective indicia of nonobviousness, the Federal Circuit is clear that no indicia are required where a challenge fails to prove prima facie obviousness.[95]

In sum, Apple has not proved by clear and convincing evidence that Claim 7 was either anticipated or obvious.  Nor has Apple shown that any aspect of the jury's verdict on validity was against the "clear weight of the evidence," such that a new trial is warranted.[96]

**SO ORDERED.**

Dated: May 1, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[92] *See* Docket No. 590 at 4.

[93] *Smith & Nephew*, 688 F.3d at 1369.

[94] *KSR*, 550 U.S. at 418.

[95] *See Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1363 (Fed. Cir. 2007).

[96] *Hanson v. Shell Oil*, 541 F.2d 1352, 1359 (9th Cir. 1976).